Phillip Bacon, Alias,

*v.*

State of Tennessee.

385 S.W.2d 107.

(*Knoxville,* September Term, 1964.)

Opinion filed December 11, 1964.

MARTIN SOUTHERN, Knoxville, for Phillip Bacon, Alias.

GEORGE F. McCANLESS, Attorney General, MARNE S. MATHERNE, Assistant Attorney General, for the State.

Mr. Justice Dyer delivered the opinion of the Court.

The defendant, Phillip Bacon, appeals from a conviction of assault and battery for which he was sentenced to pay a fine of $25.00 and serve 15 days in the county workhouse.

In late August or early September 1963 defendant, a student at the University of Tennessee in Knoxville, in company with four other young students went to the Weaver Cafeteria on Magnolia Avenue in Knoxville to get lunch. Defendant and two of these students were White; the other two students were Negroes. After obtaining his food defendant went to the table where the two Negroes were eating. Hardy C. Weaver the owner of this business went over to tell defendant he had a rule of not seating Negro and White diners at the same table. Defendant testified Mr. Weaver said, "You boys will have to move", to which defendant replied, "You will have to move us." Mr. Weaver then began to pick up the food served to defendant and the other White students removing it to another table. This action provoked an argument. Defendant in an attempt to retrieve his food got into a kind of shuffling contest with Weaver which resulted according to Weaver's testimony in defendant kicking him on the shin. The indictment in this case is based upon this act of "kicking on the shin."

The assignments of error are summarized as follows:

1. The Court erred in refusing compulsory process for eight witnesses requested by defendant.

2. The evidence preponderates against the verdict of guilty and in favor of innocence.

3. The Court erred in the charge.

4. The workhouse sentence imposed is excessive.

 The defendant had the Court to issue subpoenas for eight witnesses described by counsel for defendant as, "leaders in the Civil Rights movement in Knoxville." Among these eight was the Mayor of Knoxville, a former Mayor, religious and educational leaders in Knoxville. When a court officer served these subpoenas he reported to the Trial Judge all eight witnesses stated they had no knowledge of the facts of this case. Upon receipt of this information the Trial Judge ordered these eight witnesses not be called and defendant assigns error to this action of the Trial Judge. Defendant relies upon Section 9, Article I of the Constitution of Tennessee and the Sixth Amendment to the Constitution of the United States.

It is not disputed defendant has a constitutional right to compulsory attendance of witnesses. Defendant insists, under this right, it is a matter for him and his counsel to decide who these witnesses shall be. The question here for decision is what, if any, restrictions are placed upon the Constitutional right of a defendant to have compulsory attendance of witnesses. The point raised here is one of first impression in this State.

In the case of *O'Rourke v. State,* 166 Neb. 866, 90 N.W.2d 820 (1958) the defendant was on trial for the crime of escape and in defense thereof had requested compulsory process for unnamed penitentiary inmates. The Court, upon finding these witnesses were to be used only to show prison brutality, refused to permit the

process to issue on the ground such testimony would be wholly immaterial to the issues in the case.

In the case of *People v. Robinson,* 22 Ill. 2d 162, 174 N.E.2d 820 (1961) defendant requested compulsory process for two witnesses even though he admitted he had no knowledge of what their testimony would be. The Court in denying process pointed out a subpoena would not issue unless it was made known, "what the witness would testify to."

In *May v. United States,* 84 U.S.App.D.C. 233, 175 F.2d 994, Cert. denied 338 U.S. 830, 70 S.Ct. 58, 94 L.Ed. 505, a member of the House of Representatives was on trial for violation of a federal statute. The defendant requested compulsory process for General George Marshall who, at that time, was holding the office of Secretary of State. The Court refused the issuance of process unless informed of just what testimony would be expected from the Secretary. The Court pointed out this would be true of others similarly circumstanced.

In *United States v. Kinzer,* 98 F.Supp. 6 (D.C.1961) the Court said:

"Even where the defendant is not proceeding in forma pauperis, the court may refuse to permit the issuance of subpoenas which it appears may be an abuse of process, until it has been informed what testimony may be expected of the prospective witnesses." 98 F. Supp. 6, 9.

Corpus Juris Secundum in their work under the heading "Witnesses" made the following statements which we approve:

"The right, when guaranteed by constitutional provision, is a real, valuable, substantive, and absolute one

which may be exercised or waived by accused and of which he may not be deprived by the court, jury, or legislature.

"While it has been declared that the court has no discretion to refuse to enforce the accused's constitutional right to compulsory process, the court may, however, refuse to permit issuance of a subpoena which, it appears, may be an abuse of process, until the court has been informed of what testimony may be expected of the prospective witness." 97 C.J.S. Witnesses sec. 6.

"A court is not required to issue compulsory process for anyone whom accused may designate as a witness; the constitutional right to compulsory process requires such process for, and only for, competent, material, and resident witnesses whose expected testimony will be admissible. Within these limitations accused may obtain the attendance of any witnesses he cares to use * * *." 97 C.J.S. Witnesses sec. 9.

A trial judge has no discretion as to who he shall allow a defendant to subpoena. If a prospective witness is or probably will be a material one then a defendant has a constitutional right to have compulsory process. The matter turns on whether the issuance of process would in fact be an abuse of process, and, if the Court finds such is the case the Court has power to prevent such abuse.

In the case at bar the Trial Judge refused compulsory process for witnesses requested by defendant acting upon information the requested witnesses had no knowledge of the facts under investigation, to-wit; the guilt or innocence of defendant under the indictment for assault and battery. The Trial Judge informed defendant of his

action and reason therefor. At this point the burden shifted to the defendant to inform the Trial Judge the nature of the testimony to be expected from these prospective witnesses so that a determination could be made as to whether these prospective witnesses were material witnesses.

The defendant did not inform the Trial Judge of the nature of the testimony expected from these witnesses, and in his brief filed in this Court states he does not know what the testimony of these witnesses would have been. The first assignment of error is overruled.

Counsel for defendant has cited, three cases in support of the first assignment of error: (1) *State v. Rossi,* 71 R.I. 284, 43 A.2d 323 (1945); (2) *United States v. Davenport,* 312 F.2d 303 (7 C.A.-1963, rehearing denied); and (3) *United States v. Seeger,* 180 F.Supp. 467 (D.C.N.Y.-1960). We have examined these cases and find they are distinguishable from the case at bar on the facts of each case. The Seeger case is the strongest in the defendant's favor on the point raised. In this case the defendant was being tried for wilfully refusing to answer questions propounded to him by the House Un-American Activities Committee. The defendant had requested compulsory process be served upon the Chairman of this Committee. The Government entered a motion to quash which the Court refused to do. Since the matter under investigation was the failure of defendant to answer questions of the House Committee, then it is apparent the testimony of the Chairman of this Committee would be relevant and quite material. Further in this case counsel for defendant submitted an affidavit setting forth the nature of the testimony expected from the Chairman.

 The verdict of the jury, when approved by the Trial Judge, accredits the testimony for the State and resolves all conflicts in favor of the theory of the State. Such a verdict has displaced the presumption of innocence and has created a presumption of guilt. Here the accused has the burden of showing that the evidence preponderates against the verdict and in favor of his innocence. *White v. State* (1962), 210 Tenn. 78, 84, 356 S.W.2d 411; *Anderson v. State* (1960), 207 Tenn. 486, 495, 341 S.W.2d 385; *Cooper v. State* (1909), 123 Tenn. 37, 57, 59, 138 S.W. 826. Examining this record under these rules we cannot say the evidence preponderates against the verdict. The second assignment of error is overruled.

We have examined the charge given the jury by the Trial Judge and find no error therein. The third assignment of error is overruled.

 In view of the present day disturbances surrounding factual situations, as in this case, and it further being made known to the court the parties hereto are now removed from this State, under such circumstances, we reduce this verdict by striking the workhouse sentence therefrom and affirm as to fine and costs.