Carolyn Tramill **MOORE** et
al., Petitioners,

v.

**STATE of Tennessee, Respondent.**

Supreme Court of Tennessee.

March 5, 1979.

J. Fred Friedman, Memphis, for petitioners.

Brooks McLemore, Jr., Atty. Gen., Jack E. Seaman, Asst. Atty. Gen., Nashville, Hugh Stanton, Jr., Dist. Atty. Gen., James W. Harrison, Asst. Dist. Atty. Gen., Memphis, for respondent.

## OPINION

HENRY, Chief Justice.

This is another case involving a construction of the somewhat nebulous provisions of § 40–1131, T.C.A. While the entire section is involved, we are particularly concerned with the limitations set forth in the last sentence of the second paragraph.

This issue arose in a case in which criminal defendants were indicted during a continuance of their preliminary hearing, but more than thirty (30) days after their initial arrest.

In sustaining a plea in abatement the trial judge held that the 30 day limitation began to run in this case upon the defendants' arrest pursuant to capias. The Court of Criminal Appeals reversed, holding that the time began to run on the date of initial arrest on warrant. We granted certiorari to construe the somewhat troublesome and ostensibly ambiguous language of this statute.

While we do not agree with the trial judge in holding that the time limitation begins to run with arrest on capias, neither do we agree with the Court of Criminal Appeals that the limitation of the statute demands, without qualification, and under all circumstances, that a criminal defendant loses his statutory right to a preliminary hearing, through no fault of his own, and by virtue of the passage of time alone. Accordingly, we reverse.

## I.

### *Procedural Background*

Petitioners were arrested on or about June 1, 1975, on an arrest warrant, issued after the execution of a search warrant.

Three versions of what transpired at the preliminary hearing on June 11, 1975 appear in the record. All are consistent.

Counsel for petitioners, by affidavit, says that he appeared in General Sessions Court for the purpose of participating in the preliminary hearing. Under his version:

They were arrested pursuant to a Search Warrant . . . authorizing a search for a defendant male white known as "Chickenhawk" who is five (5) feet eleven (11) inches tall, 165 pounds, medium build and brown hair. *The officer who executed the Search Warrant and was in a position to testify personally to the material facts was not present or available. Counsel objected to hearsay testimony.* The Court was displeased. The Attorney General threatened to have the matter taken to the Grand Jury pending the preliminary hearing. The matter was reset as best I recall until December of this year; the date is not clear. A preliminary hearing was demanded, and the matter was submitted to the Grand Jury *while the preliminary hearing was being continued.* (Emphasis supplied)

The Assistant District Attorney General's version corroborates counsel for petitioners:

The preliminary hearing was continued till June the 11th, 1975. At that time *the State attempted to put on hearsay proof.* Mr. Friedman objected. *There was a disagreement* between the Judge, Judge Stinson and Mr. Friedman, *as to the sufficiency of the evidence* at the preliminary hearing, at which point *the case was reset indefinitely* according to what our proof will show. Subsequently to that, on October 7, 1975, these two defendants were indicted. . . . (Emphasis supplied)

The trial judge's finding, specifically verified by the Assistant District Attorney General:

[A]ccording to the affidavit, of Mr. Fried-man's, that they were taken before Judge Stinson. Even though their names were *not on the search warrant, they were arrested by the officers who executed the search warrant and evidently were charged with an offense.* And . . . Mr. Friedman at that time . . . *demanded a preliminary hearing.* And the *Attorney General threatened to have the matter taken to the Grand Jury pending the preliminary hearing.* And he did in fact do that. The Judge granted a continuance in the case and *while the preliminary hearing was pending, the case was taken before the Grand Jury.*

\* \* \* \* \* \*

Am I correct about that Gentlemen?

The Assistant District Attorney General answered in the affirmative and then addressed the court, making the representation heretofore quoted along with others.

Six facts are clear from this record:

*First,* the petitioners were arrested on warrants.

*Second,* they demanded a preliminary hearing.

*Third,* the State sought to present hearsay testimony.

*Fourth,* Counsel for petitioner objected.

*Fifth,* the case was continued indefinitely.

*Sixth,* during the continuance, petitioners were indicted.

Thus the posture of the case was that they had no reason for a motion to abate until the 30-day limitation technically had expired. Petitioners were indicted on October 7, 1975. Capias was issued on October 8, 1975 and served on October 9, 1975. They filed their motions to grant a preliminary hearing and/or to abate the indictment on October 10, 1975, one day after service of the capias and two days after indictment.

Under these circumstances, the trial judge abated the indictment and remanded to the General Sessions Court for a preliminary hearing. The Court of Criminal Appeals reversed.

II.

*Sec. 40–1131, T.C.A.*

This section, at all times pertinent to this inquiry, read as follows:

In all criminal cases, prior to presentment and indictment, whether the charge be a misdemeanor or a felony, the accused shall be entitled to a preliminary hearing upon his request therefor, whether the grand jury of the county be in session or not.

If the accused is indicted during the period of time in which his preliminary hearing is being continued, or at any time before accused has been afforded a preliminary hearing on a warrant, whether at his own request or that of the prosecutor, he may abate the indictment upon motion to the Court. PROVIDED, HOWEVER, THAT NO SUCH MOTION FOR ABATEMENT SHALL BE GRANTED AFTER THE EXPIRATION OF THIRTY (30) DAYS FROM THE DATE OF ACCUSED'S ARREST. (Underscored matter was deleted by Ch. 760, Acts of 1976; capitalization is for emphasis)

It is settled law in this jurisdiction that while a preliminary hearing is not constitutionally required, it is a critical stage of a criminal prosecution mandated by statutory law, and is an adversary proceeding at which the usual rules of evidence apply. *Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); *Waugh v. State,* 564 S.W.2d 654 (Tenn.1978); *McKeldin v. State,* 516 S.W.2d 82 (Tenn.1974).

It is equally well settled that a preliminary hearing is mandated only in those cases wherein the defendant has been arrested—with or without a warrant—and is not a demandable *right where the prosecution originated by presentment or indictment.* It is the prerogative of the District Attorney General and law enforcement personnel to omit the arrest procedure and take prosecutions directly to the grand jury.

*Vaughn v. State,* 557 S.W.2d 64 (Tenn. 1977); *Harris v. State,* 534 S.W.2d 868 (C.C. A.Tenn.1975).

The first paragraph of § 40–1131, T.C.A. originated in Chapter 245, Acts of 1971. It mandates a preliminary hearing irrespective of the convention of the grand jury. The same act repealed Chapter 16 of the Acts of 1899, appearing as Section 11575 in Williams Tennessee Code and in the Code Supplement of 1950 as § 40–402 (original volume), which provided, in substance, that if the grand jury was in session the justice of the peace could only try the case upon a plea of guilty. Absent such plea he could only take bond pending an investigation by the grand jury. Thus § 40–1131, T.C.A. was intended to insure that a criminal defendant obtain a preliminary hearing, without regard to grand jury sessions.

The second paragraph of § 40–1131, T.C.A. simply provides a mechanism for the enforcement of a right to a preliminary hearing. It is the last sentence that creates the difficulty:

Provided, however, that no such motion for abatement shall be granted after the expiration of thirty (30) days from the date of the accused's arrest.

When consideration is given to the context of this section, and to its historic purpose, the word "arrest" must be construed to mean a conventional arrest, with or without a warrant and prior to indictment. To construe this to mean and include arrest on capias does violence not only to the plain intent of the statute and its manifest purpose, but also to our statutory scheme wherein a capias serves a specified and unique purpose.

Under our criminal procedure, a capias is a mesne or intermediate process having the sole purpose of securing the presence of the defendant. When a defendant has been arrested, and placed in jail or released on bond, and bound to the grand jury, no process is necessary to bring him in following an indictment. It is only when he is not in actual custody, or on bond, or on his own recognizance, or when bail has been forfeited, or recognizance has been revoked, or there is a void or voidable bond, that a capias issues. §§ 40–1901, 40–1902, T.C.A. Thus a capias may or may not issue following indictment.

The effect of holding that the words "arrest" and "capias" are synonymous would be to place defendants on a different legal footing, depending upon the issuance of a capias.

But this does not end the inquiry.

The statute articulates loudly and clearly the public policy of this state that a preliminary hearing is mandatory without regard to the convention of the grand jury. To accomplish this purpose it provides for an abatement if an indictment is returned during the period of time in which the preliminary hearing is being continued, or before a defendant has been afforded a preliminary hearing. However, it further provides that no indictment shall be abated unless within thirty (30) days after the initial arrest.

It is our duty to construe this statute with the saving grace of common sense. The legislature obviously intended to afford a preliminary hearing but did not intend to sanction dilatory action and placed a heavy penalty on delay. But the statute must be given a reasonable construction and one by which it may be upheld. Obviously, the Court may not take a seasonably made motion under advisement, hold it until the thirty (30) days shall have expired, and then use the limitation to defeat an otherwise meritorious motion.

In the instant case, the record shows that a preliminary hearing was scheduled ten (10) days after arrest. The prosecution "attempted to put on hearsay proof" and the case was reset indefinitely.

The statute contemplates good faith. The defendant had a right to assume that his re-scheduled hearing would be conducted. He had a right to demand that a lawful preliminary hearing be conducted. He had a right to assume that public officials would perform their sworn duty.

In the leading case of *Waugh v. State, supra,* we held unequivocally that "probable

cause to bind over the defendant to the grand jury *must be based upon legally competent evidence which would be admissible at trial.*" (Emphasis supplied) Otherwise, we said, "the hearing will fail in its function of screening out unfounded charges." 564 S.W.2d at 659.

While the record is meager in this respect, it is patently obvious that this case raised critical evidentiary questions. There were serious questions about the validity of the search. The seizure was in doubt. Petitioners did not have a possessory interest in the searched premises and their connection therewith was open to question. This was a typical case wherein a careful, adversary-type preliminary hearing was demanded.

For us to hold that a criminal defendant who is denied a valid preliminary hearing, is promised a future hearing, and is thereafter indicted pending that hearing, may not proceed under § 40–1131, T.C.A. would make a mockery out of the clear mandate of our statute and would place the imprimatur of this Court upon raw, arbitrary, and unrestrained circumvention of the orderly processes of our Court.

█ We hold that the 30-day limitation imposed by the last paragraph of § 40–1131, T.C.A. is applicable only when all parties—including the defendant, who must act promptly—have acted in good faith and in compliance with the statute. The failure of the court or the prosecution to exercise good faith and to abide the law operates to toll the statute and preclude its invocation. Any other construction would emasculate the statute and nullify the intent of the legislature. The result would be that the State would have a death grip on preliminary hearings. The circumvention of the statute and the defeat of the defendant's right to a preliminary hearing would be the inevitable result.

█ We reiterate that in this case petitioners were indicted at a time when they had been led to believe they would be given a preliminary hearing and after the 30 days had passed. Sanctioning such procedure would be callous and unconscionable.

While the trial judge technically was incorrect, it is clear from the record that he recognized the manifest injustice of the State's position. The decision of the Court of Criminal Appeals is reversed, the indictment is vacated and the petitioners will be afforded an immediate and valid preliminary hearing, if the State elects to proceed with this prosecution.

COOPER, BROCK and HARBISON, JJ., concurring.

FONES, J., dissenting.

FONES, Justice, dissenting.

I dissent.

Construing T.C.A. § 40–1131, the majority held in *Waugh v. State*, 564 S.W.2d 654 (Tenn.1978), that when proceedings begin with a presentment or an indictment without the accused being in custody or upon bail for the offense charged, the accused is not entitled to a preliminary hearing. In short, a preliminary hearing is available only when the first step in the prosecutorial process is an arrest, with or without a warrant. I concurred in that part of the opinion.

In *Waugh* the Court expressly pretermitted any consideration of the issue that confronts us in this case, referring to it as the "curious time limitation contained in the last sentence of T.C.A. § 40–1131." *Id.* at 661.

Here, that "curious" time limitation is described as "the somewhat troublesome and ostensibly ambiguous language of this statute."

We are concerned here with the last sentence of the statute wherein the only conceivable ambiguity is whether the phrase "the accused's arrest" refers to the initial arrest or an arrest on capias. The majority opinion resolves that question, and I am in full accord with the conclusion that the phrase refers to the initial arrest only.

As for the effect of the unambiguous thirty-day limitation, the majority opinion does not deny its existence or attempt to

alleviate its application based upon any language of the statute. The thrust of the opinion, as I understand it, is simply that in the interest of fair play we should abrogate the thirty-day limitation, except "[w]hen all parties—including the defendant, who must act promptly—have acted in good faith and in compliance with the statute."

This is pure court-decreed legislation. If this Court is of the opinion that preliminary hearings are exclusively within the purview of the judicial department of government, then we should say so, ignore the statute, and write our own rules governing such hearings. In my view, it is not appropriate for this Court to continue the statutory amending process begun in *Waugh.*

The realities of the statute are that the Legislature, irrespective of the quality of draftsmanship, granted a very limited preliminary hearing right, applicable in the first instance only to defendants arrested, with or without a warrant, prior to presentment or indictment, and limited in the second instance to a period of thirty days immediately following the date of arrest by the device of allowing a motion to quash any indictment returned within that period.

While the statute does not expressly prohibit the holding of a preliminary hearing more than thirty days after the date of arrest, the state is free to indict after that period; and, when, and if, an indictment is returned the preliminary hearing is rendered moot. That is because of the fundamental law of this state that a defendant can only be brought to trial by indictment or presentment of a grand jury and that a magistrate's decision that there is no probable cause does not preclude an indicted defendant from going to trial. Tenn.Const., Art. I, § 14; T.C.A. §§ 40–301, 302; *State v. D'Anna,* 506 S.W.2d 200 (Tenn.Cr.App. 1973).

In my view, the Legislature simply did not intend to grant an accused an inalienable right to a preliminary hearing irrespective of time limitations or action by the grand jury on the offense charged, but instead knowingly and expressly limited that right. It is our duty to interpret applicable statutes as written, not as we would have authored them.

I would affirm the Court of Criminal Appeals and remand for trial upon the indictments.