STATE of Tennessee, Appellant,

v.

Jeffrey G. WOMACK, Appellee.

Court of Appeals of Tennessee, Middle Section.

Nov. 28, 1979.

Certiorari Denied by Supreme Court Dec. 3, 1979.

John J. Hollins and Edward M. Yarbrough, Nashville, for appellee.

John C. Zimmermann, Asst. Atty. Gen., William M. Leech, Jr., Atty. Gen., Nashville, of counsel, Victor S. Johnson, III, Asst. Dist. Atty., Nashville, Thomas H. Shriven, Dist. Atty. Gen., of counsel, for appellant.

TODD, Judge.

### OPINION ·

The State of Tennessee has appealed from an order of the Circuit Judge granting a petition for certiorari and supersedeas and reversing an order of the Juvenile Court which quashed certain subpoenas issued at the instance of the accused.

As received in this Court, the record of the Circuit Court contained no transcript of proceedings of the Juvenile Court. In response to the writ of certiorari issued by this Court upon its own motion, the Clerk of the Juvenile Court has certified and transmitted to this Court a transcript of the proceedings of the Juvenile Court in this cause. *Newport v. Rowen*, 5 Tenn. (4 Haywood) 196 (1817).

Said record contains a "Petition" sworn to by Sgt. Douglas Dennis on August 28, 1979, and asserting that, on or about February 25, 1975, Jeffrey Glenn Womack, a child under the age of 18 years, committed a felonious assault and murder upon Marcia Virginia Trimble, aged 9 years. Said petition also contains a notation over the signature of the Clerk of the Juvenile Court as follows:

"Jeffrey Glenn Womack was taken into custody on 8–28–79 at 2:30 AM o'clock and placed in detention."

The next item in the record is a "Motion for Discovery and Inspection" filed on behalf of the defendant. This motion was

subsequently denied by the Juvenile Judge, and no action has been taken to obtain review of his decision. It is not before this Court on this appeal.

The record contains three subpoenas for witnesses to testify "in the interest of" the defendant. One is for Dr. Jerry Francisco to appear with his notes concerning the autopsy on the body of Marcia Trimble. Another is for Lt. Sherman Nickens, Chief of Homicide Division, Nashville Police Department to appear with six groups of documentary evidence from the police files. The third subpoena is for Diane Vaughn, Nashville Police Force, to appear with a pair of spectacles identified as the property of the mother of the deceased.

The record contains an undated decree of the Juvenile Court stating that the Court heard motions to quash the three above mentioned subpoenas "upon the argument of counsel" and concluding as follows:

"From all of which the Court finds and reaffirms its decision to sustain the State's position and quash the subpoenas *referred to the defendant.*"

Finally, the record from the Juvenile court contains the following certificate of the Juvenile Judge:

"This is to certify that there was no evidence presented in the case of Jeffrey Glenn Womack, all hearings were on motions."

On October 3, 1979, the defendant filed in Circuit Court a petition for writs of certiorari and supersedeas, exhibiting an uncertified copy of the decree of the Juvenile Court as above mentioned.

On October 4, 1979, the State filed an answer denying the authority of the Circuit Court to review said decree and asserting that said decree was correct.

On October 4, 1979, the Circuit Judge entered an order sustaining the petition and ordering:

". . . that . . . the Clerk . . . . issue a writ of certiorari and supersedeas to the . . . Judge of the Juvenile Court . . . reversing and superseding the order . . . quashing the subpoenas . . ."

From said order an appeal has been allowed by the Circuit Judge and accepted by this Court.

The brief of the State proposes the following issues on appeal:

"1. Whether the Circuit Court possessed the authority to grant writs of certiorari and supersedeas for an order of the Juvenile Court rendered during disposition of a transfer hearing where the provisions of Tennessee Code Annotated Section 37–258(d) prohibit any civil or interlocutory appeal from orders of a juvenile court during transfer proceedings.

2. Whether the Juvenile Court possessed the authority to quash subpoenas for State witnesses which were requested by the defendant for the purpose of discovery and where no showing was made by the defendant that such witnesses would be offered to negate the State's evidence tending to establish probable cause that the defendant committed the charged offense."

Appellant's first insistence is that "the Circuit Court had no authority to grant writs of certiorari and supersedeas *over* the Juvenile Court's order."

Appellant insists that jurisdiction of this proceeding is placed in the Criminal Court by T.C.A. § 37–258(d) which reads in pertinent part as follows:

"(d) There shall be no civil or interlocutory appeal from a juvenile court's *disposition* pursuant to § 37–234. In cases where the juvenile court has found that a child should be tried as an adult, pursuant to § 37–234(a), the criminal court, upon motion of the child filed within ten (10) days of the juvenile court order, shall hold a hearing as expeditiously as possible to determine whether it will accept jurisdiction over the child, provided that if no motion is filed with the criminal court within the ten (10) day period, the child shall be subject to indictment, presentment or information for the offenses charged and thus subject to trial as an adult . . ." (Emphasis supplied)

This is not a civil or interlocutory appeal from a *disposition* of the cause by the Juvenile Court. This is an action of common law certiorari to correct a *pre-trial* action of the Juvenile Court. There has been no disposition of the case by the Juvenile Judge. Transfer to Criminal Court is only one of the possible results. A *possible* transfer to Criminal Court is not sufficient grounds for negating the statutory general authority of the Circuit Court in favor of the specific, limited authority of the Criminal Court which does not arise until transfer.

T.C.A. §§ 16–501, 16–512, and 27–801 provide as follows:

"16–501. General jurisdiction.—The circuit court is a court of general jurisdiction, and the judge thereof shall administer right and justice according to law, in all cases where the jurisdiction is not conferred upon another tribunal."

"16–512. Appellate Jurisdiction.—The circuit court has an appellate jurisdiction of all suits and actions, of whatsoever nature, unless otherwise provided, instituted before any inferior jurisdiction, whether brought by appeal, certiorari, or in any other manner prescribed by law."

"27–801. Constitutional basis.—The writ of certiorari may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy."

Under § 16–512 the Circuit Court has appellate jurisdiction of decisions of the Juvenile Courts. *State v. Bockman*, 139 Tenn. 422, 201 S.W. 741 (1917); *Doster v. State*, 195 Tenn. 535, 260 S.W.2d 279 (1953).

Although the record does not disclose the exact nature of the Juvenile Court hearing for which the subpoenas were issued, the briefs of both appellant and appellee refer to the impending hearing as a "transfer hearing." Therefore this Court will deal with the issues as though the record revealed such.

A "transfer hearing" is provided by T.C.A. § 37–234 which reads in pertinent part as follows:

"37–234. Transfer from juvenile court.—(a) After a petition has been filed alleging delinquency based on conduct which is designated a crime or public offense under the laws, including local ordinances, of this state, the court, before hearing the petition on the merits, may transfer the child to the sheriff of the county to be held according to law and to be dealt with as an adult in the criminal court of competent jurisdiction. The disposition of the child shall be as if he were an adult if:

(1) The child was sixteen (16) years or more of age at the time of the alleged conduct, or the child was fifteen (15) or more years of age at the time of the alleged conduct if the offense charged included murder, manslaughter, rape, robbery with a deadly weapon or kidnapping;

(2) A hearing on whether the transfer should be made is held in conformity with §§ 37–224, 37–226, and 37–227;

(3) Reasonable notice in writing of the time, place and purpose of the hearing is given to the child and his parents, guardian or other custodian at least three (3) days prior to the hearing; and,

(4) The court finds that there are reasonable grounds to believe that:

(i) The child committed the delinquent act as alleged;

(ii) The child is not committable to an institution for the mentally retarded or mentally ill; and,

(iii) The interests of the community require that the child be put under legal restraint or discipline.

(b) In making the determination required by subsection (a) of this section, the court may consider, among other matters:

(1) The extent and nature of the child's prior delinquency records;

(2) The nature of past treatment efforts and the nature of the child's response thereto;

(3) Whether the offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

(4) Whether the offense was committed in an aggressive and premeditated manner; and,

(5) The possible rehabilitation of the child by use of procedures, services and facilities currently available to the court in this state."

It is seen from the above that a "transfer hearing" in Juvenile Court involves many issues, of which the first is whether there are reasonable grounds to believe the child committed the delinquent act as alleged.

Until a juvenile has been "transferred" to the Criminal Court, the proceeding against him is civil in nature and appellate review and supervision of the cause resides in the civil and not the criminal courts of the State. T.C.A. § 37–233. *Juvenile Court of Shelby County v. State*, 139 Tenn. 549, 201 S.W. 771 (1918).

This Court respectfully overrules appellant's objection to the jurisdiction of the Circuit Court.

Appellant next insists that the Circuit Court abused its authority in reversing the action of the Juvenile Court. This complaint will be treated as an allegation that the action of the Circuit Judge amounted to reversible error because the Juvenile Judge committed no error reversible by certiorari.

Appellant insists that the Juvenile Judge has not "exceeded the jurisdiction conferred" or "acted illegally" without "plain, speedy and adequate remedy", as required by T.C.A. § 27–801, quoted above.

Under the restrictive terms of T.C.A. § 27–801, the Circuit Court had authority to correct an essential illegality in the action of the Juvenile Judge which deprived the juvenile of procedural rights assured by Federal and State Constitutions.

As stated in *State ex rel. McMorrow v. Hunt*, 137 Tenn. 243, 192 S.W. 931 (1917):

". . . certiorari (applies when) the essential forms of the law have not been observed." 137 Tenn. at 250, 192 S.W. at 933.

In *Taylor v. Continental Tennessee Lines, Inc.*, 204 Tenn. 556, 322 S.W.2d 425 (1959) the Supreme Court held that refusal of the privilege of filing a plea in abatement was a "failure to proceed according to the essential requirements of the law" and "was contrary to law and in legal effect . . . a denial . . . of their day in court."

Appellant insists, correctly, that, since the Juvenile Court has the authority to issue subpoenas, it has the authority to quash subpoenas. Appellant further insists, correctly, that the quashing of subpoenas was not beyond the authority of the Juvenile Judge.

However, the exercise of authority in such manner as to deprive an accused of a substantive procedural right (to compel attendance of witnesses) guaranteed by the Federal and State Constitutions is an essential illegality committed within actual powers which will authorize relief by certiorari. Constitution of the United States, Amendments VI and XIV; Constitution of Tennessee, Article 1, Secs. 8 and 9.

In *Moore v. State*, Tenn.1979, 578 S.W.2d 78, the accused was arrested upon a General Sessions Warrant, but, the District Attorney General "took the case to the Grand Jury" before the General Sessions preliminary hearing. After indictment, the Criminal Judge abated the indictment and remanded to the General Sessions Court for a preliminary hearing. The Court of Criminal Appeals reversed, but the Supreme Court reversed the Court of Criminal Appeals, affirmed the action of the Criminal Judge and said:

"It is settled law in this jurisdiction that while a preliminary hearing is not constitutionally required, it is a *critical stage* of a criminal prosecution mandated by statutory law, and is an adversary proceeding at which the usual rules of evidence apply. *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed. 387 (1970); *Waugh v. State*, 564 S.W.2d 654

(Tenn.1978); *McKeldin v. State*, 516 S.W.2d 82 (Tenn.1974)."

In the view of this Court, the "transfer hearing" in Juvenile Court is no less a critical stage than the preliminary hearing in *Moore*, indeed, it is the exact counterpart of the General Sessions preliminary hearing to the extent of the issue of probable cause. The rule should be the same for both proceedings.

Appellant next insists the juvenile has a plain and speedy remedy in the Criminal Court (if the Juvenile Judge should order transfer). This Court does not agree. The right of the juvenile to a full and fair hearing before the juvenile judge is virtually identical to the right of an adult to a full and fair preliminary hearing before a General Sessions Judge. There is no reason in justice and fairness that a juvenile should be deprived of his rights in Juvenile Court simply because he might later assert those rights in a later hearing before another court. If the juvenile is not to receive a full and fair hearing with due process in Juvenile Court, and must wait transfer to the Criminal Court to have the benefits of his constitutional rights, then the juvenile hearing is a waste of time and energy and should be abolished.

This principle is emphasized in the case of *In Re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed. 527 (1967), wherein the United States Supreme Court held that there is no difference between the constitutional rights of juvenile citizens and those of adult citizens, and reversed a juvenile commitment for lack of due process. See also *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed. 84 (1966) which involved a "transfer order" from Juvenile Court.

The appellant's contention that the action of the Juvenile Judge was not, by its nature, subject to reversal by the Circuit Judge is respectfully rejected.

Appellant insists, correctly, that there is no provision for discovery, as such, as a part of a pre-trial "probable cause hearing", and that the reception of evidence at such a hearing should properly be confined to issues before the court at the time.

Appellant also insists, correctly, that a court has the power and the duty to prevent abuse of its process by abating subpoenas for witnesses whose testimony would be immaterial.

Contrary to the insistence of the appellant, this Court considers that the right to process to compel the attendance of witness is so fundamental to our system of justice (U.S. Constitution, Amendments VI and XIV, Constitution of Tennessee, Article 1, Sections 8 and 9), and the right to a preliminary hearing is so well recognized (*State v. Moore, supra* ) that when a motion is made to quash a subpoena issued at the instance of an accused for a preliminary probable cause hearing, the burden is upon the movent to make a prima facie showing by acceptable evidence that the issuance of the subpoena was an abuse of the processes of the court because the witness is without information as to any material issue in the case. In *Bacon v. State*, 215 Tenn. 268, 385 S.W.2d 107 (1964) the evidence received by the Court was informal in the extreme. (The officer serving the subpoenas told the judge that the witnesses had told him that they knew nothing about the case). There was no objection to the informality of the evidence, hence, there was no occasion to rule upon its admissibility. The Supreme Court simply observed that when informed that the Trial Judge "had information that the witnesses were without knowledge, at this point the burden shifted to the defendant to inform the Trial Judge the nature of the testimony to be expected from these people . . ." In the same case, the Supreme Court said:

"A trial judge has no discretion as to who he shall allow a defendant to subpoena. If a prospective witness is or probably will be a material one then a defendant has a constitutional right to have compulsory process. The matter turns on whether the issuance of process would in fact be an abuse of process, and, if the Court finds such is the case the Court has power to prevent such abuse." (215 Tenn. at 273, 385 S.W.2d at 109)

The informal presentation mentioned in *Bacon* would hardly withstand serious objection as to competency and form. A more orderly and acceptable presentation would include an exhibit to the motion to quash in the form of affidavit or affidavits of the subpoenaed witness or other competent person that the witness is without knowledge or denies knowledge. Such would require counter affidavit or affidavits of grounds to believe that the witness does in fact have knowledge.

In *Ezell v. State*, 220 Tenn. 11, 413 S.W.2d 678 (1967) the Supreme Court held:

"[3–5] The right of a criminal defendant to present witnesses in his own behalf, is a basic constitutional safeguard; consequently, any rule which abridges this right must be examined with scrutiny." (220 Tenn. at 17, 413 S.W.2d at 680–681)

■ Since no evidence was heard by the Juvenile Judge, there is nothing in this record to support the action of the Juvenile Judge in quashing the subpoenas. Until abuse of process has been shown *factually*, there is no ground for quashing a properly issued and executed subpoena.

■ Appellant argues that the juvenile is seeking to "force the State to produce all its witnesses." It is hornbook law that generally no party "owns" a witness. The process of subpoena is available to any party to compel the presence of any person to give evidence regardless of whether the witness is claimed by the opposite party.

■ Appellant insists, correctly, that, at a probable cause hearing, the prosecution is not required to present all witnesses having knowledge of the facts. However, this does not prohibit the accused from calling witnesses to negative probable cause, even if they are claimed by the prosecution as "its witnesses."

■ Appellant next insists that an accused has no right to use the transfer hearing "as an independent vehicle for discovery prior to trial." Conceding that evidence which is immaterial to the issues to be decided may not be elicited over objection, evidence which is material to the issues may not be excluded merely because adversary or the Court conceives that the purpose of discovery is being served.

It is inherent in the nature of any evidentiary hearing that the parties "discover" what the witnesses say and may use such information in preparation for future hearings.

■ In short, the real or supposed motive of discovery is not a justifiable ground for refusing an accused the right to the testimony of any witness who has knowledge of facts material to the issues to be decided at the hearing.

■ *United States v. Wilkins*, U.S.D.C., E.D.Pa., 422 F.Supp. 1371 (1976), cited by appellant, is not controlling here for a number of reasons. The ruling was upon a motion for a new trial on the ground that the prosecutrix did not testify at a preliminary hearing. There is no indication that the defendant actually subpoenaed the witness; and there is nothing in said opinion to indicate that the decision is based upon the failure of the accused to establish the materiality of the testimony of the witness. Also, the right of unlimited cross examination is not recognized in the Federal Courts (Federal Rules of Evidence, 611[b]), whereas it is recognized in Tennessee (*Ray v. Hutchison*, 17 Tenn.App. 477, 685 S.W.2d 948 (1933)).

In *United States v. Wilkins, supra,* the trial judge did state in his opinion:

". . . Of course, where a preliminary examination is held discovery may be a collateral or incidental benefit to the defendant. *United States v. Johnson*, 514 F.2d 92, 94 (5th Cir.), cert. denied, 423 U.S. 1020, 96 S.Ct. 459, 46 L.Ed.2d 393 (1975); *United States v. Anderson*, 481 F.2d 685, 691 (4th Cir. 1973), aff'd, 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 21 (1974); *United States v. Brumley*, 466 F.2d 911, 915, 916 (10th Cir. 1972), cert. denied, 412 U.S. 929, 93 S.Ct. 2755, 37 L.Ed.2d 156 (1973)." (422 F.Supp. at 1375)

Appellant insists that:

"it is clear that the only reason is to discover the State's case and not for the purpose of negating probable cause."

There is no evidence in this record to support this insistence, or the finding of the Juvenile Judge to this effect. Moreover, as previously stated, such a finding would be justified only when satisfactorily shown that the witness has no knowledge of any fact material to the issues to be decided at the hearing.

The holding of *United States v. Wilkins, supra,* that an accused may not subpoena a prosecutrix to a federal preliminary examination "absent an offer of proof that her testimony would negate probable cause" is considered contrary to the constitutional and statutory rights of citizens of this state and will not be followed in this case. Neither the District Judge in *Wilkins* nor the appellant has suggested how an accused might go about proving that the testimony of the witness would "negate probable cause" if not permitted to interrogate the witness.

Equally unacceptable is the holding of *United States v. Bates,* 287 F.Supp. 657 (E.D.Tenn.1968), cited by appellant, that an accused may be denied the presence of a material witness merely because the magistrate conceives that the witness is called solely for discovery. The opinion in *Bates* does not state the evidentiary grounds for the magistrate's finding. Absent satisfactory evidence that the witness possessed no knowledge of facts material to the issue to be decided, the decision in *Bates* is contrary to the concept of this Court of the rights of Tennessee citizens, and will not be followed.

Likewise, in *United States v. Hinkle,* 307 F.Supp. 117, D.D.C., 1969, cited by appellant, the accused was prevented from cross examining the government's witnesses outside the scope of direct examination under the limited scope of cross examination in federal courts (Federal Rule of Evidence 611[b]), whereas the "wide open" rule of cross examination is recognized in Tennessee. *Ray v. Hutchison,* 17 Tenn.App. 477, 68 S.W.2d 948 (1933).

Also, the *Hinkle* opinion states:

"The defendant had every opportunity to call other witnesses had he desired to do so."

The accused in the present case was denied such opportunity.

Appellant insists that the accused is "attempting to require the State to produce all *its* witnesses . . . ." As previously stated, neither party *owns* any witness. The accused is not attempting to require the prosecution to produce anything or anybody. The prosecution is seeking to prevent the accused from producing (by subpoena) evidence in his own defense.

Appellant states correctly that the prosecution is not required to present its entire case at a preliminary hearing, but appellant apparently misconceives the meaning of "entire case." The words do not import any special claim upon any particular witness or evidence as part of the "case." The words simply describe those witnesses and that evidence which a party intends to present at a trial. The same witnesses or evidence are equally available to the accused if and when he chooses to present them in his own defense.

*Holt v. State,* Okl.Cr.App.1973, 506 P.2d 561, and *State v. Williams,* 27 Ariz.App. 279, 554 P.2d 646 (1976), cited by appellant, are not in accord with Tennessee law to the extent that they purport to deny to the accused the right to "wide open cross examination" as to any matter material to the issues to be determined at the hearing.

This Court does not agree with appellant's proposition, supported by *People v. Scott,* N.Y.City Crim.Ct.1976, 393 N.Y.S.2d 294, that it is necessary for the accused to show that evidence would negate probable cause in order to have the benefit of subpoena for it. The rule, as previously stated, is the unlimited right of subpoena limited only by authority to quash upon a showing (by the objector) that the witness has no information material to the issues or that the evidence sought is equally immaterial.

■ Finally, appellant insists, citing *Hinkle,* supra, that the accused has no right

to inquire of witnesses as to the names and addresses of other suspects. To the extent that evidence connecting others to the offense charged would reduce the probability of guilt of the accused, he is entitled to present same to the Juvenile Judge. The Juvenile Judge is empowered to rule upon the propriety of such questions as they do or do not reflect directly upon probable guilt of the accused and/or credibility of witnesses.

This Court is not unaware of the probable results of this decision in the present case and in similar cases before the Juvenile Courts as well as preliminary hearings of charges against adults in General Sessions Courts. Heretofore, the practice of calling witnesses for the defense in such hearings has not been particularly widespread. Hereafter, the practice may well be extended and enlarged to further occupy the time of courts and prosecutors; but the rights of citizens cannot be denied to avoid inconvenience.

Moreover, the more thorough presentation of evidence at preliminary hearings would tend to disclose weaknesses or strengths in the evidence against the accused to enable the prosecution to make more fully informed decisions as to continuing prosecution, plea bargaining and preparation for trial. The accused will thereby be enabled to make more informed decisions as to plea bargaining and preparation for trial.

Not the least possibility is that the Juvenile or General Sessions Judge may be enabled to render a more informed decision upon the issues before him.

Another possible result is the preservation of evidence for use in event of the unavailability of a witness at the time of trial. This result could be a benefit or detriment to the party presenting the witness at the preliminary hearing, according to subsequent events and the nature of the testimony.

The abuse of the privilege of calling witnesses is, of course, a possibility. However, this possibility in our judicial system is familiar to all participants, and its restraint must depend upon the integrity, common sense and discretion of lawyers and judges—all within the bounds of due process.

The disposition of this appeal is without prejudice to the authority of the Juvenile Judge to exclude any witness or evidence found to be irrelevant subject to the right of the parties to preserve a record of the purpose and/or substance of the witness or evidence excluded. *Conlee v. Taylor*, 153 Tenn. 507, 285 S.W. 35 (1926); *Truslow v. State*, 95 Tenn. 189, 31 S.W. 987 (1895); *Miller v. State*, 206 Tenn. 103, 332 S.W.2d 179 (1959).

The judgment of the Circuit Judge is affirmed. The decree of the Juvenile Court quashing subpoenas issued at the request of the accused is reversed and vacated. The cause is remanded to the Juvenile Court for further proceedings.

Circuit Court Affirmed.

Juvenile Court Reversed.

Remanded to Juvenile Court.

DROWOTA and LEWIS, JJ., concur.