IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
March 6, 2012 Session

**STATE OF TENNESSEE v. THORNE PETERS**

**Appeal from the Criminal Court for Shelby County**
**No. 09-07358      J. Robert Carter, Judge**

**No. W2011-00680-CCA-R3-CD  - Filed May 9, 2012**

A Shelby County Criminal Court jury convicted the defendant, Thorne Peters, of one count of simple possession of marijuana, *see* T.C.A. § 39-17-418, and the trial court imposed a sentence of 11 months and 29 days' incarceration in the local workhouse; with respect to the manner of service, the judgment said,"[T]ime served." On appeal, the defendant challenges the sufficiency of the evidence to support his conviction, the trial court's granting the State's motion to quash a subpoena of the former sheriff, and the trial court's limitation of cross-examination of a witness. Discerning neither a paucity in the evidence nor reversible error committed by the trial court, we affirm the judgment of the trial court but remand for clarification of pretrial jail credit.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed; Remanded**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and ALAN E. GLENN, J., joined.

James P. Rossitt IV (on appeal and elbow counsel at trial), Memphis, Tennessee, for the appellant, Thorne Peters (pro se at trial).

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Michael McCusker, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Shelby County Sheriff's Office ("SCSO") Detective Robert Jewell testified that he was assigned to the Narcotics Unit Search Warrant Team in July 2009. He recalled that the defendant ran a bar, Imbibrios, where authorities suspected the defendant sold illegal drugs on a regular basis. Detective Jewell's investigation required the use of a confidential

informant to "infiltrate" the bar, so he selected Ashley Egan as his "eyes and ears" inside the bar. Detective Jewell testified that Ms. Egan had worked for him as a confidential informant for approximately one and one-half years on more than a dozen cases and that her information had been reliable in each investigation. Because Ms. Egan knew the defendant through her boyfriend, an employee at Imbibrios, Detective Jewell determined she would be used to make controlled purchases of illegal drugs from the defendant.

Detective Jewell testified that on July 8, 2009, Ms. Egan telephoned the defendant and asked the defendant if he could sell her one-half ounce of marijuana. The next day, Ms. Egan telephoned the defendant to confirm that the defendant had acquired the marijuana. Both of the telephone conversations were recorded. Digital recordings were admitted at trial and played for the jury; however, the recordings were not included in the record on appeal.

After Ms. Egan's confirming the defendant's procurement of the marijuana, Detective Jewell searched Ms. Egan and her vehicle, gave her marked currency in the amount of $50, and watched her enter the defendant's bar to purchase the marijuana. He did not, however, "wire" Ms. Egan for the purpose of recording the actual transaction. Ms. Egan returned from the bar a few minutes later with a "little more than seven grams of marijuana," about one-quarter ounce, and $25. Another detective field-tested the substance purchased by Ms. Egan. The substance tested positive for the presence of tetrahydrocannabinol ("THC"), confirming that it was marijuana.

On cross-examination, Detective Jewell admitted that he did not "strip search" Ms. Egan before sending her into the bar to purchase the marijuana. Likewise, he admitted that he did not equip Ms. Egan with any monitoring device to record the transaction. He maintained that she was not "wired" because it is "not required," and he simply "didn't choose to" wire Ms. Egan. He acknowledged that, consequently, the only evidence in his investigation that the defendant personally sold Ms. Egan the marijuana derived from Ms. Egan's statement. Detective Jewell testified that, several months after the completion of the investigation into the defendant's activities, Ms. Egan was arrested and placed in the drug court diversion program. Detective Jewell said that he did not recover the $25 "buy money" on July 9 because the investigation was ongoing at that time.

SCSO Detective Alex Poston testified that he field-tested the substance purchased by Ms. Egan and confirmed that it was marijuana. He delivered the marijuana to the SCSO evidence and property room and later forwarded the evidence for testing at the Tennessee Bureau of Investigation ("TBI") Crime Laboratory. He explained that he and Detective Jewell did not utilize any type of recording device during the actual purchase because it is "not cost effective or efficient" and that they actually used such devices "maybe

two to five percent of the time."

TBI Crime Laboratory testing confirmed that the substance recovered from Ms. Egan was marijuana weighing 6.7 grams.

Ashley Egan testified that, in the summer of 2009, she dated an Imbibrios employee. She said that she and the defendant had used "weed, pills, and alcohol" together. She said that Detective Jewell approached her in July 2009 about acting as a confidential informant and that she agreed to assist in the investigation of the defendant's activities at the bar. She admitted to using "every drug you can imagine," but she testified at trial that she had been sober for 68 days.

Ms. Egan contacted the defendant about purchasing one-half ounce of marijuana. Ms. Egan testified that the defendant told her that "he was going to call his guy." Ms. Egan testified that on July 9, 2009, she went to Imbibrios, where she met the defendant and purchased a quarter-ounce of marijuana. She recalled wearing shorts and a tank top. Detective Jewell searched her vehicle and her person before she entered the bar. Inside the bar, Ms. Egan ordered a drink and stayed a few minutes so as to not raise the defendant's suspicions. The defendant came to her seat, she asked him if he had the marijuana, and the defendant told her "yes." The defendant went to the "DJ" booth and returned with "a quarter." Ms. Egan paid the defendant $25 for the marijuana, stayed for a few more minutes, and then left the bar to meet the detectives in a nearby parking lot, where she gave them the marijuana and the remaining $25.

On cross-examination, Ms. Egan testified that she became a confidential informant following her arrest for prescription drug fraud. She indicated that she had never "worn a wire" in any of her informant activities. She admitted that she was accused of stealing $250 from the SCSO on December 3, 2010, and of stealing an automobile on December 27, 2010. She agreed that in her first recorded telephone conversation with the defendant, the defendant indicated that he did not have any marijuana. She explained, however, that the defendant also "said that [he] could get it[,] just call before" coming by the bar.

With this proof, the State rested its case. The pro se defendant then testified in a narrative form, stating "I smoke marijuana. I did not sell marijuana from my club." On cross-examination the defendant admitted to using marijuana since the age of 12. Likewise, he acknowledged his penning the book *Puffin' Tuff My War for Weed* by Kingpin Thorne Peters. The defendant explained his belief that possession for resale differs from a "buddy buy," implying that what transpired between himself and Ms. Egan was a "buddy buy." He admitted that, during their telephone conversations, he told Ms. Egan that he could get her

one-half ounce of marijuana for $50. He also admitted to telling Ms. Egan that he would "make a call" and instructing her to "call before you come."

With this evidence, the jury convicted the defendant of simple possession of marijuana. The trial court sentenced the defendant to 11 months and 29 days in the local workhouse and, recognizing that the defendant had served almost 19 months in jail pending trial, indicated on the judgment form "time served." Although the trial court noted "time served" in the special conditions section of the judgment form, the court failed to include any notation concerning the pretrial jail credits earned by the defendant. Accordingly, we direct the court on remand to enter a corrected judgment containing an accurate account of the pretrial jail credits earned by the defendant.

On appeal, the defendant challenges the sufficiency of the evidence to support his conviction. He also contends that the trial court erred by quashing a subpoena for Mark Luttrell and by limiting the defendant's cross-examination of Ms. Egan concerning her commission of two theft offenses. The State argues that the evidence is sufficient, that the trial court properly quashed the subpoena based upon relevancy, and that the trial court correctly excluded extrinsic evidence of Ms. Egan's drug court diversion. The State also concedes that the trial court erroneously limited the cross-examination of Ms. Egan but argues that the error was harmless. We will address each argument in turn.

*Sufficiency of the Evidence*

The defendant argues that the evidence is insufficient to support his conviction because Ms. Egan's subsequent theft arrests caused a "fatal blow to her credibility as an informant." The State counters that circumstantial evidence supports Ms. Egan's testimony and, furthermore, that the defendant's own admissions at trial establish sufficient evidence to support his conviction.

We review the defendant's claim of insufficient evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id.*.

Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

"It is an offense for a person to knowingly possess or casually exchange a controlled substance . . . ." T.C.A. § 39-17-418(a). Pursuant to this statute, "[i]t is [also] an offense for a person to distribute a small amount of marijuana not in excess of one-half (½) ounce (14.175 grams)." *Id.* § 39-17-418(b). Any violation of these subsections is a Class A misdemeanor. *Id.* § 39-17-418(c).

In the present case, Detective Jewell testified that Ms. Egan telephoned the defendant about getting one-half ounce of marijuana. Apparently, in the tape recorded telephone calls, the defendant told her that he could "call his guy" and fulfill her request. Ms. Egan met the defendant at his bar the next day where she purchased one-quarter ounce of marijuana from the defendant. Detective Jewell searched Ms. Egan before she entered the bar to make the purchase to ensure that she was not already possessing any marijuana. Admittedly, Ms. Egan's testimony is the only evidence that the defendant was the person who actually passed the marijuana to her. The defendant cross-examined Ms. Egan concerning her subsequent theft arrests, and Ms. Egan candidly admitted them. The jury chose to accredit her testimony, as was within their province to do. Furthermore, the defendant admitted on cross-examination that he agreed to procure the marijuana for Ms. Egan. We conclude that the evidence is sufficient to support the defendant's conviction for simple possession in this case.

*Motion to Quash Subpoena*

The defendant also argues that the trial court erred by quashing his subpoena of former sheriff Mark Luttrell. The State contends that this issue is waived due to the defendant's failure to include in the record on appeal the transcript of the motion for new trial hearing. Although such an omission may, in some cases, result in a waiver of an appellate issue, we discern that the record before this court is sufficient to review the defendant's claim.

We review a trial court's decision to quash a subpoena for an abuse of discretion. *State v. Womack*, 591 S.W.2d 437, 443 (Tenn. Crim. App. 1979). The trial court's discretion is limited to situations when the issuance of the subpoena results in an abuse of process. *Bacon v. State*, 385 S.W.2d 107, 109 (Tenn. 1964). Absent a showing of an abuse of process, the trial court cannot interfere with a defendant's ability to subpoena

witnesses. *Id.* When a witness's testimony is not relevant, the trial court may quash the subpoena to avoid an abuse of process. *Womack*, 591 S.W.2d at 443.

In the present case, the defendant sought issuance of a subpoena compelling the attendance at trial of Mark Luttrell, former Shelby County Sheriff, based upon Mr. Luttrell's participation in the "sting" operation involving the defendant's bar and subsequent arrest on July 16. As grounds for the issuance of the subpoena, the defendant asserted that Mr. Luttrell was part of a conspiracy to "plant and manipulate evidence" against the defendant. From the record, we discern that the defendant was originally charged in a second indictment with a felony drug offense surrounding events that occurred on July 16. The events concerning the instant case occurred on July 9. At the motion to quash hearing, the State announced that it would "nolle pros" the felony indictment concerning the July 16 arrest, thereby rendering former sheriff Luttrell's purported involvement in the July 16 arrest irrelevant to the remaining July 9 offense. From this record, we conclude that the trial court's granting the State's motion to quash was not an abuse of discretion.

*Limitation of Cross-Examination*

In his final issue, the defendant argues that the trial court improperly restricted his cross-examination of Ms. Egan concerning two theft arrests that occurred after her participation as a confidential informant in this case. The State again contends that this issue is waived due to the defendant's failure to include in the record on appeal the transcript of the motion for new trial hearing. Alternatively, the State argues that the trial court erroneously limited the cross-examination on the basis of the diversion status of the plea but that the limitation was harmless. Although we agree that such an omission from the appellate record may, in some cases, result in a waiver of an issue, we determine the record before this court is sufficient to review the defendant's claim.

Prior to Ms. Egan's testimony, the pro se defendant requested a hearing outside the presence of the jury to determine the admissibility of court documents concerning Ms. Egan's January 2011 best interest plea to misdemeanor theft. The pro se defendant sought admission of Ms. Egan's January 2011 guilty plea petition placing her on drug court supervision via a judicial diversion program, arguing that the evidence of the theft conviction was relevant to rebut Detective Jewell's testimony concerning Ms. Egan's reliability as a confidential informant and to attack Ms. Egan's credibility as well. During the hearing, the State acknowledged that Ms. Egan was arrested in December 2010 when, in her capacity as a confidential informant, she took $250 that was to be used to purchase heroin and "went AWOL." The State also acknowledged Ms. Egan's arrest two weeks later for automobile theft.

-6-

The trial court ruled that the defendant could ask Ms. Egan if she had been accused of the thefts but specifically precluded the introduction of any extrinsic evidence concerning her arrest, guilty plea, or diversion status. The court conditioned this ruling to Ms. Egan's admission of the accusations and reserved ruling concerning the extrinsic evidence's admissibility if Ms. Egan denied the accusations. During her cross-examination, Ms. Egan admitted that she had been accused of theft of $250 from the SCSO during a "sting operation" and theft of an automobile.

The State correctly notes that the trial court erroneously limited the cross-examination of Ms. Egan. The trial court disallowed the evidence about the guilty pleas because the charges had been diverted and no judgments of conviction had been entered at the time of Ms. Egan's testimony. Although neither the pro se defendant nor the State argued via Tennessee Rules of Evidence 608 or 609 during the jury-out hearings, we discern the trial court based its ruling on Rule 609, which addresses impeachment of a witness by conviction of a crime. We, however, determine Rule 608 to be appropriate to our analysis. Rule 608(b) provides:

> Specific instances of conduct of a witness for the purpose of attacking or supporting the witness's character for truthfulness, other than convictions of a crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, if probative of truthfulness or untruthfulness and under the following conditions, be inquired into on cross-examination of the witness concerning the witness's character for truthfulness or untruthfulness . . . .

Tenn. R. Evid. 608(b). By contrast, Rule 609 concerns the admissibility of "evidence that the witness has been convicted of a crime." Tenn. R. Evid. 609(a).

Although the trial court correctly concluded that there was no conviction at the time of Ms. Egan's testimony, the trial court failed to consider the admissibility of Ms. Egan's conduct via Rule 608(b). *See State v. Jesse Ross Tolbert*, No. E1999-02326-CCA-R3-CD, slip op. at 3-5 (Tenn. Crim. App., Knoxville, Aug. 18, 2000) (noting that Rule 609 is inapplicable to judicial diversion offenses because "[w]hen judicial diversion is granted a judgment of conviction is not entered in the record"). In *Tolbert*, this court ruled that Rule 608 allows for impeachment, via the facts and disposition of the charged offense, of a witness who has been granted judicial diversion. *Id.* Therefore, when considered in the framework of Rule 608(b), the trial court correctly excluded extrinsic evidence consisting of the plea documents. The court, however, erroneously restricted the defendant's cross-examination of Ms. Egan by disallowing questions concerning Ms. Egan's commission of

the thefts and the diverted charges, which implicated her credibility, and by limiting the defendant to questions concerning whether Ms. Egan had been "accused" of the thefts. Clearly, the impeachment effect of the testimony was diminished by this improper limitation.

That being said, we further determine that the erroneous restriction of cross-examination was harmless in this case. The defendant asked Ms. Egan whether she had been accused of two separate theft offenses in December 2010, 17 months after her participation as a confidential informant in the SCSO's investigation of the defendant and two months prior to trial. She admitted that she had been accused of the two theft offenses, one of which involved a theft of money from the SCSO during an unrelated controlled drug buy. Likewise, Detective Jewell testified that he knew that the defendant had recently been placed on judicial diversion. Thus, the jury heard some evidence of the factual basis for Ms. Egan's recent charges as well as the disposition of the charges. Furthermore, the defendant acknowledged at trial that the recorded telephone conversations between himself and Ms. Egan revealed his telling Ms. Egan he could obtain the marijuana by "mak[ing] a call" and his advising Ms. Egan to telephone him before coming to the bar to purchase the marijuana. In our view, the trial court's erroneous restriction of cross-examination was harmless in this case.

*Conclusion*

The evidence is sufficient to support the defendant's conviction of simple possession of marijuana. The trial court committed no reversible error. Accordingly, the judgment of the trial court is affirmed with instructions on remand to correct the judgment to reflect accurately the pretrial jail credits earned by the defendant.

_____
JAMES CURWOOD WITT, JR., JUDGE