IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Brief January 8, 2002

## STATE OF TENNESSEE v. WINFRED LEE FAULCON

**Direct Appeal from the Circuit Court for Dyer County**
**Nos. C00-384, C00-385     Lee Moore, Judge**

---

**No. W2001-01153-CCA-R3-CD  - Filed February 26, 2002**

---

The Appellant, Winfred Lee Faulcon, was convicted after a trial by jury of two offenses of possession of a Schedule VI controlled substance, marijuana, with intent to sell, which stemmed from events that occurred on October 21st and November 16th of 2000.  Faulcon received two consecutive eighteen-month community corrections sentences with nine months of continuous confinement in the county jail.  On appeal, Faulcon raises the following issues for our review:  (1) whether the State's action of releasing a witness which the State had subpoenaed for trial constituted misconduct when the witness thereafter became unavailable to the defense; (2) whether the evidence was sufficient to support his convictions; (3) whether the two charges against Faulcon should have been considered as one continuing criminal enterprise and thus, would have resulted in the imposition of only one sentence; (4) whether the trial court erred in imposing a sentence in excess of the minimum necessary for class E felonies; and (5) whether the trial court erred in not imposing an alternative non-incarcerative sentence for the entire period.  After a review of the record, we find that Faulcon's issues are without merit.  Accordingly, the judgment of the Dyer County Circuit Court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, J. and ALAN E. GLENN, J., joined.

Charles S. Kelly, Jr., Dyersburg, Tennessee, for the Appellant, Winfred Lee Faulcon.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Kim R. Helper, Assistant Attorney General; C. Phillip Bivens, District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

## Factual Background

On October 21, 2000, Officer James Fogarty responded to a 911 call at 1500 Maxie Drive in Dyersburg, Tennessee. Upon arriving at the residence, Brenda Adams "explained that she was assaulted by her boyfriend, Mr. Faulcon, and that he had just left the scene in a black Cadillac." Officer Fogarty conveyed the information he had received from Adams to Officers Peckenpaugh and Jowers, who where en route to the Maxie residence. Thereafter, Officer Fogarty escorted Adams "to the police department to allow her to sign a warrant against Mr. Faulcon."

As advised by Officer Fogarty, Officers Peckenpaugh and Jowers began to look for the Appellant in the Meeks Street area, the location of an apartment belonging to the Appellant's aunt. The Appellant was located at the Meeks Street address, and placed under arrest for domestic assault. Upon placing the Appellant under arrest, a search was conducted of the Appellant's person. A small metal scale, 81.2 grams of marijuana, rolling papers, a pager, and some money were found in the Appellant's pockets. The Appellant was later released from jail and ordered not to return to the Maxie address.

On November 16, 2000, Investigator Jim Joyner received information from a confidential informant that the Appellant was in possession of a large quantity of marijuana located at the Maxie address, and that the Appellant lived at that location with Adams. Investigator Joyner also testified that Investigator Billy Williams had advised him that the Appellant was living with Adams at 1500 Maxie, and that Investigator Williams "had received a call the day before, which would have been November 15[th], that [the Appellant] was in a local business trying to purchase a postal scale." Based upon this information, a search warrant was obtained and executed upon the residence. Adams and Anthony Cole were present at the home when the officers arrived; however, the Appellant was not. The Appellant was located and asked to come to the Maxie residence. After the Appellant's arrival, the residence and the Appellant's vehicle were searched. Found in the residence was a postal scale, sandwich bags, two pistols, and a large quantity of marijuana. Marijuana was also discovered in the Appellant's vehicle. The marijuana seized from the residence and vehicle totaled 548.8 grams.

On December 11, 2000, a Dyer County grand jury returned two indictments against the Appellant charging him with possession of marijuana in excess of one-half ounce with intent to sell, based upon the October 21st and November 16th episodes. The indictments were consolidated for trial. After a trial by jury on February 7, 2001, the Appellant was convicted as charged on both indictments. The Appellant was sentenced to consecutive eighteen-month community correction sentences with nine months jail confinement. This timely appeal followed.

# ANALYSIS

## I. Subpoena of Brenda Adams

The Appellant first argues that "the trial court erred in refusing to allow Defendant-Appellant's counsel to call Brenda Adams as a witness, thereby tacitly approving the State's misconduct in subpoenaing her, then not calling her as a witness, and releasing her from subpoena in order to make her unavailable to defense counsel." The Appellant asserts that the actions of the State, subpoenaing Brenda Adams but not putting her on the stand, "amounted to prosecutorial misconduct and trickery." Additionally,

> the trial court's refusal to allow defense counsel to call Brenda Adams to the stand, when he stated he was doing so, served to compound the misconduct of the district attorney general, to thwart defense counsel's efforts to ascertain the truth of the matters involved and present evidence, and to deprive the Defendant-Appellant of a fair trial.

At trial, the Appellant called Brenda Adams as his first witness, whereupon the following colloquy commenced:

> THE COURT: Where is Mr. Horner?
> GENERAL BIVENS: Your Honor, they're not going to be back until 1:30. I had subpoenaed Ms. Adams to use in rebuttal, and, to my knowledge, my subpoena is the only subpoena she's here on.
> THE COURT: Mr. Kelly, you're going to have to go with something else right now, because she's got a right against incrimination – I mean, she's charged as a defendant in this case, and if you put her on right now – you can put her on after her lawyer gets here, okay?
> MR. KELLY: Yes, sir.

The Appellant never again attempted to call Brenda Adams to the stand. Apparent from the record, the trial court did not refuse to allow the Appellant to call Brenda Adams to the stand, but rather instructed defense counsel to wait until Brenda Adams' lawyer arrived. Furthermore, the State issued a subpoena for Brenda Adams, but the Appellant did not.

We first note that as argued by the State, the Appellant has waived review of this issue by failing to raise an objection at trial. Tenn. R. App. P. 36(a). Nonetheless, there is nothing before us which indicates that the State hindered or obstructed the issuance of compulsory process for the attendance of the witness in this case. The process of subpoena was available to the Appellant to compel the presence of Brenda Adams to give evidence regardless of whether Adams was "claimed by the opposite party." *State v. Womack*, 591 S.W.2d 437, 444 (Tenn. Crim. App. 1979). Clearly the Appellant was free to avail himself of the statutory provisions of Tennessee Code Annotated § 40-17-107 (1997), which permits the issuance of subpoenas "for such witnesses as either the district attorney general or the defendant may require." Accordingly, we find this issue to be without merit.

## II. Sufficiency of the Evidence

The Appellant next contends that the evidence was insufficient to support the verdicts. A jury conviction removes the presumption of innocence with which a Defendant is cloaked and replaces it with one of guilt, so that on appeal, a convicted Defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Likewise, it is not the duty of this court to revisit questions of witness credibility on appeal, that function being within the province of the trier of fact. *State v. Adkins*, 786 S.W.2d 642, 646 (Tenn. 1990); *State v. Burlison*, 868 S.W.2d 713, 719 (Tenn. Crim. App. 1993). Instead, the Appellant must establish that the evidence presented at trial was so deficient that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). In *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990), this court held these rules applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence.

It is a class E felony for a Defendant to knowingly possess marijuana in excess of one-half ounce with intent to manufacture, deliver or sell such marijuana. Tenn. Code Ann. § 39-17-417 (2001). We, in turn, examine the October 21st and November 16th offenses to determine whether the evidence was sufficient to convict the Appellant of two counts of possession with intent to sell.

Regarding the October 21st offense, the Appellant does not challenge that he possessed marijuana in excess of one-half ounce, but only that he did not knowingly intend to sell such marijuana. Upon searching the Appellant's person incident to his arrest for domestic violence, the officers found 81.2 grams of marijuana, a small metal scale, rolling papers, a pager, and some money in his pockets. The 81.2 grams was packaged in thirteen smaller bags. Endalin Adams, Brenda Adams' daughter, testified at trial that "it was lot of people that came over, traffic, but not – I haven't never seen the marijuana with my own eyesight, but I seen 'em exchange something for money." Furthermore, the jury could infer from the amount of marijuana possessed by the Appellant, along with other relevant facts, that such was for the purpose of selling it or otherwise dispensing it. Tenn. Code Ann. § 39-17-419 (1997). Based upon the foregoing, we conclude that the evidence was sufficient to find the Appellant guilty of possession with to intent sell an amount of marijuana in excess of one-half ounce on October 21, 2000.

Regarding the November 16th offense, the Appellant argues both that he did not possess the 548.8 grams of marijuana discovered in the Maxie residence and his vehicle, and that he did not knowingly intend to sell such marijuana. The relevant issue is whether the Appellant constructively possessed the marijuana found at 1500 Maxie Drive.

A crime may be established by circumstantial evidence alone. *State v. Tharpe*, 726 S.W.2d 896, 899-900 (Tenn. 1987). However, before an accused may be convicted of a criminal offense

based only upon circumstantial evidence, the facts and circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant." *State v. Crawford*, 470 S.W.2d 610, 612 (Tenn. 1971). In other words, a conviction may not rest solely upon conjecture, guess, speculation, or a mere possibility. *Tharpe,* 726 S.W.2d at 900. Instead, a "web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances [the fact finder] could draw *no other reasonable inference* save the guilt of the defendant beyond a reasonable doubt." *Crawford,* 470 S.W.2d at 613 (emphasis added); *see State v. Sexton*, 917 S.W.2d 263, 265 (Tenn. Crim. App. 1995).

A conviction for possession of a controlled substance may be based upon actual or constructive possession. *State v. Brown*, 823 S.W.2d 576, 579 (Tenn. Crim. App. 1991); *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). Before a person can be found to constructively possess a drug, it must first appear that the person has the power and intention at any given time to exercise dominion and control over the drugs either directly or through others. *Cooper,* 736 S.W.2d at 129 (quoting *State v. Williams*, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981)).

We acknowledge that in reviewing a conviction for possession of a controlled substance, the dispositive question is not ownership or whether the accused had control over the place where the drugs were found; rather, the question is whether the accused had actual or constructive possession of the drugs themselves. Indeed, under a theory of constructive possession, physical presence or dominion over the drugs is not required. To the contrary, constructive possession only requires "the power and intention . . . to exercise dominion and control" over the drugs either directly or indirectly. *Williams*, 623 S.W.2d at 125. Obviously, proof that the accused had ownership or control over the property where contraband is kept may help resolve the question of constructive possession because it gives rise to an inference of knowledge and possession of the contraband. *See State v. Brown*, 915 S.W.2d 3, 7-8 (Tenn. Crim. App. 1995); *State v. Jackson*, No. M1998-00035-CCA-R3-CD (Tenn. Crim. App. at Nashville, May 5, 2000). Nonetheless, it is not a prerequisite for conviction.

The proof, in the light most favorable to the State, established that the Appellant was in possession of 548.8 grams of marijuana at 1500 Maxie Drive, and that the Appellant lived at that location with Adams. There was also evidence that the Appellant had tried to purchase a postal scale at a local business on November 15, 2000.[1] Furthermore, a postal scale, sandwich bags, and two

---

[1]This proof was established by the testimony of Investigator Jim Joyner. At trial, Investigator Joyner testified that he received information from a confidential informant that the Appellant lived at 1500 Maxie, and was in possession of a large quantity of marijuana at that location. He also testified that Investigator Billy Williams advised him that the Appellant lived at 1500 Maxie, and that Investigator Williams had received a phone call on November 15th, the day before the Appellant's arrest, "that [the Appellant] was in a local business trying to purchase a postal scale."

These statements are inadmissible hearsay, and are essentially the only proof which connects the Appellant after his arrest on October 21st to the residence and the marijuana. The State argues that the testimony of Endalin Adams establishes that the Appellant returned to the residence after his arrest and therefore, also connects the Appellant to the

(continued...)

pistols were found during the search of the Maxie residence. From these facts, Endalin Adams testimony that a "lot of people that came over, . . . [and] I seen 'em exchange something for money," and the inference permitted by Tennessee Code Annotated § 39-17-419 (1997) concerning the amount of marijuana, we find sufficient evidence to conclude that the premises were in the Appellant's control, and that he possessed the "power and intention to exercise dominion and control" over the marijuana seized by the police during the search. Accordingly, we find the proof sufficient to establish that on November 16, 2000, the Appellant knowingly possessed marijuana in excess of one-half ounce with the intent to sell.

### III. One Continuing Criminal Enterprise

Third, the Appellant argues that "the two charges against the Defendant-Appellant, Winfred Lee Faulcon, should have been considered as one continuing criminal enterprise and, therefore, not subject to two indictments and, therefore, mandatory sentences." He contends that,

> since the offenses charged in the two cases involved here, C00-384 and C00-385, occurred within twenty-six (26) days of each other and involved the same alleged criminal activity, there should have been only one indictment involving this alleged criminal activity; however, the State of Tennessee issued two indictments on the same date, December 11, 2000, by the same grand jury in order to have consecutive sentencing imposed in the event of conviction.

The trial court consolidated the two indictments for trial finding that,

> these offenses were committed in a closely connected series of events and time and that there may be an impossibility of avoiding introduction of evidence of one offense with respect to the other offense and that these offenses are based on a common scheme or plan and should be tried together.

The Appellant's argument relies upon the finding of the trial court consolidating the two offenses. First, we are unable to agree that consolidation of the two offenses for trial was proper because the offenses did not constitute parts of a common scheme or plan. The first offense stemmed from a domestic assault and the second offense was charged following execution of a search warrant. *See generally* Tenn. R. Crim. P. 8(b); *State v. Spicer*, 12 S.W.3d 438 (Tenn. 2000); *State v. Hoyt*, 928 S.W.2d. 935 (Tenn. Crim. App. 1995); *State v. Hallock*, 875 S.W.2d 285 (Tenn. Crim. App. 1993), *perm. to app. denied* (Tenn. 1994). However, consolidation was not challenged by the Appellant at trial or on appeal and therefore, is not an issue before this court for adjudication. Rather, the

---

[1](...continued)

residence and the marijuana. However, we disagree. The testimony of Endalin Adams establishes that the only time the Appellant was permitted to enter the Maxie residence after his arrest (on Oct. 21st) was "to get his clothes and his personal belongings." No objection to the statements of Officer Joyner was made at trial and therefore, this information was properly considered by the jury. *State v. Bennett,* 549 S.W.2d 949, 950 (Tenn. 1977) (inadmissible hearsay evidence, admitted without objection, may be considered by the jury as if it were admissible).

Appellant misguidedly argues in favor of the consolidation ruling to support his argument that the October 21st and November 16th offenses should have been charged in the same indictment.

The Appellant cites to Rule 8(a) of the Tennessee Rules of Criminal Procedure, concerning mandatory joinder of offenses, which provides that:

> Two or more offenses shall be joined in the same indictment, presentment, or information, with each offense stated in a separate count, or consolidated pursuant to Rule 13 if the offenses are based upon the same conduct or arise from the same criminal episode and if such offenses are known to the appropriate prosecuting official at the time of the return of the indictment(s), presentment(s), or information(s) and if they are within the jurisdiction of a single court.

The term "same conduct" or "same criminal episode" refers to a single action which may be divisible into distinct offenses. *See State v. Dunning*, 762 S.W.2d 142, 143-44 (Tenn. Crim. App. 1988) (separate acts of selling cocaine to different officers from two distinct law enforcement investigations on different days is not a single action but a series of independently motivated occurrences); *State v. Baird*, No. M2000-02314-CCA-R3-CD (Tenn. Crim. App. at Nashville, Oct. 19, 2001). These offenses are not based upon a single action which may be divisible into distinct offenses, and therefore the Appellant's conduct is not subject to mandatory joinder under Rule 8. Accordingly, this issue is without merit.

### IV. Sentencing

When an accused challenges the length, range, or the manner of service of a sentence, this court has a duty to conduct a *de novo* review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (1997); *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *Ashby*, 823 S.W.2d at 169. Furthermore, when conducting a *de novo* review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the pre-sentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the Appellant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-102, -103, -210 (1997); *Ashby*, 823 S.W.2d at 168.

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and made findings of fact that are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). However, where the trial court fails to comply with the statutory provisions of sentencing, appellate review is *de novo* without a presumption of correctness. *State v. Winfield*, 23 S.W.3d 279, 283 (Tenn. 2000) (citing *State v.*

*Poole*, 945 S.W.2d 93, 96 (Tenn. 1997)). In this case, the trial court properly considered principles of sentencing, and accordingly, we afford the sentencing decision a presumption of correctness.

### A. Minimum Sentence

Fourth, the Appellant argues that the "trial court erred in imposing a sentence in excess of the minimum necessary for the 'E' felonies of which Defendant was convicted." The record reveals that the Appellant worked for Amteck for approximately sixteen months as an electrician's helper. The Appellant's employer, who characterized the Appellant as dependable, responsible, and reliable, would have permitted him to return to work if acquitted of the drug charges. The Appellant had previously worked for MTD Products. He was fired from MTD Products because of a DUI conviction. The Appellant had also served for seventeen years in the Tennessee National Guard and held the rank of sergeant. At the time of trial, the Appellant was still in good standing with the National Guard. Furthermore, the Appellant "had a child support obligation which he paid regularly and on which he was current at the time of his arrest."

In the present case, the Appellant was convicted of two offenses of possession of marijuana in excess of one-half ounce with intent to sell, a class E felony. Tenn. Code Ann. § 39-17-417 (2001). As a Range I offender, the sentencing range for possession with intent to sell is one to two years. Tenn. Code Ann. § 40-35-112(a)(5) (1997). The presumptive sentence for a class E felony "shall be the minimum sentence in the range if there are no enhancement or mitigating factors." Tenn. Code Ann. § 40-35-210(c) (1997). Where enhancement factors are present, but no mitigating factors, "then the court may set the sentence above the minimum in that range but still within the range." Tenn. Code Ann. § 40-35-210(d) (1997). Where there are both enhancing and mitigating factors present, "the court must start at the minimum sentence in the range, enhance the sentence within the range as appropriate for the enhancement factors, and then reduce the sentence within the range as appropriate for the mitigating factors." Tenn. Code Ann. § 40-35-210(e) (1997).

The trial court imposed a sentence of eighteen months for each offense of possession with intent to sell. The sentences were mandatorily consecutive because the Appellant was on bail for the October 21st offense when the November 16th offense occurred, and the Appellant was later convicted of both offenses. *See* Tenn. R. Crim. Pro. 32(c)(3).

The trial court found that two enhancement factors applied to the sentences stemming from the October 21st offense: (1) the Appellant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; and (2) the Appellant was a leader in the commission of an offense involving two or more criminal actors. Tenn. Code Ann. § 40-35-114 (1997). The trial court applied enhancement factors (1) and (2) to the sentence stemming from the November 16th offense and additionally applied enhancement factor (13); *i.e.*, the felony was committed while the Appellant was on bail from a prior felony conviction for which the Appellant was convicted. *Id.* The trial court found that no mitigating factors applied to the Appellant.

The Appellant first contends that enhancement factor (1) was misapplied because his history of criminal convictions "mostly involved alcohol, for which he had never been treated." We find

that the trial court properly applied this factor to the Appellant's sentences. The Appellant's past criminal record includes numerous misdemeanors; DUIs, public intoxication, and a violation of the check law. While many of these convictions involved alcohol, we nonetheless, conclude the Appellant's past criminal history is more than sufficient to support the trial court's application of this factor. Second, the Appellant contends that the trial court erred in applying enhancement factor (2), *i.e.*, the Appellant was a leader in the commission of an offense involving two or more criminal actors. With respect to enhancement factor (2), we also find that the evidence supports the trial court's application of this factor. The marijuana was kept at Brenda Adams' home, both before and after the October 21st arrest of the Appellant. Brenda Adams was also a co-defendant in this case. Endalin Adams often saw the Appellant exchanging "something for money" at the Maxie residence. The record supports the finding that the Appellant was the leader in the commission of the offense.

The Appellant next argues that the trial court erred by not giving any weight to the mitigating factors, and that due to the presence of mitigators, his sentence should have been set at the minimum of the range, one year. The Appellant specifically contends that the following enumerated and non-enumerated mitigators should have been found to apply by the trial court:

> (1) the defendant's criminal conduct neither caused nor threatened serious bodily injury, Tenn. Code Ann. § 40-35-113(1) (1997);
> (2) the defendant had no prior felony record;
> (3) although convicted of two offenses, each was committed in a closely-connected series of events and time showing that the offenses were based on a common scheme rather than two separate acts in knowing disregard for the law.

In our *de novo* review, we conclude that mitigating factor (1) was applicable in that the Appellant's conduct neither caused nor threatened serious bodily injury. However, we find that, in the total circumstances of this case, this factor is entitled to only minimum weight. *State v. Hooper*, M1997-00031-CCA-R3-CD (Tenn. Crim. App. at Nashville, Feb. 8, 1999), affirmed in part and reversed in part by 29 S.W.3d 1 (Tenn. 2000) (reversed on other grounds); *State v. Kilpatrick*, M1998-00625-CCA-R3-CD (Tenn. Crim. App. at Nashville, Jan. 13, 2000), *perm. to app. denied* (Tenn. 2000). With respect to non-enumerated mitigating factor (2), the trial court properly disregarded this factor. While it is true that the Appellant did not have a prior felony record, he did have prior misdemeanor convictions. Appellant's non-enumerated mitigating factor (3) is not applicable to the present case because, as we have previously discussed, the two episodes did not constitute parts of a common scheme or plan. Accordingly, we find no error in the trial court's refusal to apply the Appellant's non-enumerated mitigating factors.

The weight to be afforded an existing factor is left to the trial court's discretion so long as the court complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. *State v. Boggs*, 932 S.W.2d 467, 475 (Tenn. Crim. App. 1996). The weight to be afforded mitigating and enhancement factors derives from balancing relative degrees of culpability within the totality of the circumstances of the case involved. *Boggs*, 932 S.W.2d at 476; *see also State v. Marshall*, 870 S.W.2d 532, 541 (Tenn. Crim. App. 1993). Based upon the foregoing, we conclude that the record supports the trial court's decision to enhance the

Appellant's sentence six months beyond the minimum of the range. Therefore, we find the trial court's imposition of an eighteen month sentence in each case to be clearly justified.

## B. Alternative Sentencing

Finally, the Appellant contends that the trial court "erred in not imposing an alternative sentence for the entire period of Defendant's sentence." We first note that the Appellant did receive an alternative sentence; *i.e.*, placement in Westate Corrections Network, the local community corrections program. We assume, however, that the Appellant's argument was intended to focus upon the fact that he was denied an alternative sentence involving total non-incarceration. Especially mitigated or standard offenders convicted of a class C, D, or E felony, who do not possess a criminal history evincing a clear disregard for the laws and morals of society and a failure of past efforts at rehabilitation, are presumed to be favorable candidates for alternative sentencing options absent evidence to the contrary. Tenn. Code Ann. § 40-35-102(5), (6) (1997). However, alternative sentencing options may be denied if it is shown that the Appellant has a long history of criminal conduct, that confinement is necessary to avoid depreciating the seriousness of the offense, that confinement is particularly suited for the Appellant to provide an effective deterrent, or that the Appellant has not been rehabilitated with less restrictive methods. Tenn. Code Ann. § 40-35-103(1)(A)-(C) (1997). In this case, the trial court specifically found that a sentence other than total confinement would depreciate the seriousness of the offense, and that the Appellant had not been rehabilitated with less restrictive methods.

We find that the trial court properly denied the Appellant's request for a non incarcerative sentence. The following facts are gleaned from the record since no presentence report was included in the record on appeal. As previously noted, the Appellant had previously been convicted of numerous misdemeanors; including DUIs, public intoxication, and a violation of the check law. The Appellant's time was suspended for two DUI arrests except for forty-eight hours, and his time was again suspended except for forty-five days for an arrest occurring in 1999. The record clearly established that past efforts at rehabilitation have been of no avail. Again, as observed in the instant case, the Appellant's potential to reoffend is great as demonstrated by the fact that the November 16th offense was committed while the Appellant was on bail for the October 21st offense. Moreover, as the trial court found, the record reflects the need to avoid depreciating the seriousness of the two offenses. Accordingly, we find that a sentence of total non-incarceration was properly denied.

**CONCLUSION**

Based upon the foregoing, we find that the Appellant's convictions for two offenses of possession of marijuana in excess of one-half ounce with intent to sell were proper. We further conclude that the trial court properly sentenced the Appellant to an effective three year community corrections sentence of which nine months was to be served in the county jail. Accordingly, the Appellant's judgments of convictions and sentences are affirmed.

_____
DAVID G. HAYES, JUDGE