IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
May 22, 2018 Session

**STERLING DAVIS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Monroe County
No. 15-188        Sandra Donaghy, Judge**

_____

**No. E2017-01308-CCA-R3-PC**
_____

A Monroe County jury convicted the Petitioner, Sterling Davis, of possession of 300 grams or more of cocaine with intent to sell, possession of more than half an ounce of marijuana with intent to sell, and possession of drug paraphernalia.  The trial court imposed an effective sentence of forty years, and this court affirmed the judgments on appeal.  *State v. Sterling Jerome Davis*, No. E2012-01398-CCA-R3-CD, 2013 WL 6047558, at *1 (Tenn. Crim. App., at Knoxville, Nov. 14, 2013), *perm. app. denied* (Tenn. May 13, 2014).  In a petition for post-conviction relief, the Petitioner raised multiple issues not relevant to this appeal.  The post-conviction court denied relief after a hearing.  On appeal, the Petitioner raises the following issues: (1) the State failed to disclose facts that would be classified as *Brady* material; (2) the State willfully omitted facts which would have invalidated the search warrant in this case; and (3) the post-conviction court abused its discretion when it quashed a subpoena.  We affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS, P.J. and THOMAS T. WOODALL, J., joined.

D. Mitchell Bryant, Athens, Tennessee for the appellant, Sterling Davis.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Stephen D. Crump, District Attorney General; Joseph V. Hoffer, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I.   Facts and Background**

1

This case arises from the discovery of large amounts of cocaine, marijuana, cash, and drug paraphernalia in the Petitioner's residence. A Monroe County jury convicted the Petitioner of possession of 300 grams or more of cocaine with intent to sell, possession of more than half an ounce of marijuana with intent to sell, and possession of drug paraphernalia.

## A. Trial

This court summarized the facts presented at the suppression hearing and trial:

> [T]he [Petitioner] filed a motion to suppress the results of the search, arguing, among other things, that the search warrant was unsupported by probable cause. At the suppression hearing, Investigator Lewis Jones of the Tenth Judicial District Public Defender's Office identified photographs he had recently taken of the [Petitioner's] brick residence on Third Street, the adjacent mobile home, and the common driveway, which were admitted as exhibits to the hearing.

> Kenneth Cable, an employee of the waste management company that collected trash from the area's homes, testified that the trash receptacles for both homes were regularly placed together for pickup in the corner of the mobile home's yard. He said the trash receptacles were identical and that, other than dumping the trash out, he had no way of knowing which trash belonged to which residence.

> Detective Conway Mason of the Monroe County Sheriff's Department identified copies of the search warrant and the affidavit he had prepared in support of the search warrant, which were admitted as an exhibit to the hearing. Among other things, the affidavit contained the following pertinent information:

>> 3. For the past several years your affiant has been receiving information of illegal narcotics sales at [the [Petitioner's] residence]. The information contained herein was derived from my own investigation, conversations with other law enforcement officials, witness statements from neighbors or confidential sources of information unless otherwise indicated.

>> 4. On July 21st 2010 your affiant conducted a trash pull from the discarded trash of [the [Petitioner's] residence].

Upon inspecting the contents of the discarded trash I discovered a marijuana stem and several plastic baggies. On or around July 29th, 2010, I was contacted by a confidential source of information herein referred to as SOI 1. SOI 1 stated that he/she was present, on this date, at [the [Petitioner's]] residence. SOI 1 stated that once inside the residence he/she observed a marijuana roach/blunt on a desk inside the residence. Within three days of September 5th, 2010 your affiant was contacted again by SOI 1 who stated that he/she was present with [sic] these three days at the residence [of the [Petitioner]] and observed an amount of marijuana inside the residence.

5. SOI 1 is a proven credible and reliable source whose information has led to the discovery of marijuana in the past. SOI 1 has assisted your affiant in investigations in the past which ha[ve] le[d] to the arrest and convictions of individuals for possessing or selling illegal drugs. SOI 1 has shown knowledge of identifying marijuana through interviews and conversations with your affiant.

Detective Mason testified that he pulled the trash from the side of the driveway on which the mobile home was located because Cable told him that the residents of both homes placed their trash together in that area. He said there was nothing in the trash to indicate exactly which residence it had come from. He believed, however, that it was the [Petitioner's] trash because he had never received any information about the resident of the mobile home selling marijuana. He acknowledged that there was nothing in the affidavit to indicate that the [Petitioner] was present at the time the confidential informant saw the marijuana. He further acknowledged that the affidavit stated only that the informant saw "an amount of marijuana" without specifying how much. On cross-examination, he testified that the statements he made in his affidavit were true.

On October 7, 2011, the trial court entered an order overruling the motion to suppress. The court found that there were no false statements in the affidavit made either intentionally to deceive or with a reckless disregard for their truth and that the proof showed that the detective conducted a trash pull of trash that he believed came from the [Petitioner's] residence. The court further found that the information in the affidavit was not stale and that it was sufficient to establish probable cause for the search. . . . The

3

[Petitioner] was subsequently indicted for possession of 300 grams or more of cocaine with the intent to sell, possession of more than one-half ounce but less than ten pounds of marijuana with the intent to sell, and possession of drug paraphernalia.

. . . .

Detective Mason testified that he lived in the vicinity and was familiar with the [Petitioner's] Third Street residence because he drove past it almost every day on his way to work. He said that the [Petitioner] and another individual were in the living room when he and his fellow officers arrived on September 5, 2010, to execute the search warrant. He stated that they first secured the [Petitioner] and his companion, cleared the residence, and then searched the home in a systematic fashion. Among other items, they uncovered and seized a large amount of marijuana and cocaine, some of which was packaged in individual plastic sandwich bags; $154,844 in cash, which was in $100 bills bundled together in $5000 increments; plastic baggies; a FoodSaver machine; and four sets of scales. Detective Mason explained that the presence of scales, plastic baggies, and the FoodSaver machine, which was used to provide air-tight packaging to preserve freshness, indicated to him that the drugs were being packaged for resale. Most of the seized items were found in a back bedroom in which there was a photograph of the [Petitioner] on the wall, a photograph of the car that Detective Mason had regularly seen the [Petitioner] driving, a box of checks in the [Petitioner's] name, and a Sentry safe containing a wallet with credit cards in the [Petitioner's] name, the [Petitioner's] social security card, two of the [Petitioner's] expired driver's licenses, and various other papers and photographs. Detective Mason testified that he found the car he had seen the [Petitioner] driving, a 1997 Nissan, outside on the property and seized it in accordance with the drug forfeiture process. There was also a locked storage building on the property, which he searched after finding the key to the lock on the [Petitioner's] key ring. Detective Mason described the forfeiture process and identified the [Petitioner's] signed petition for a hearing on the seizure of property in which the [Petitioner] listed himself as the owner of the $154,844 in cash. The petition was then admitted as a trial exhibit.

On cross-examination, Detective Mason acknowledged that he was the one who identified the residence as the [Petitioner's], that the address on the [Petitioner's] checks was different from the address of the Third Street residence they searched, and that his research revealed that another man was

the owner of the Third Street residence. He testified that the room in which they found most of the seized items was "pretty messy" with "quite a bit of stuff" in it, including boxes and clothing stacked against the wall. He conceded that they did not attempt to take any fingerprints from any of the surfaces or items in the home. He testified that he was unaware that the other individual in the home with the [Petitioner] at the time he executed his search, Stephen Yates, was on probation at the time. He was, however, aware of Mr. Yates's general background. He said that none of the various pieces of identification in the [Petitioner's] name was dated later than 2006. At the request of defense counsel, he identified the [Petitioner's] current driver's license, which was admitted as an exhibit and which listed the [Petitioner's] address as the same as that on the [the Petitioner's] checks. He said he believed that was the address of the [the Petitioner's] mother.

Linda Wilder, a forensic technician with the Tennessee Bureau of Investigation ("TBI") testified that she received the substances submitted by Detective Mason to the TBI laboratory for analysis and placed them in a secure vault to await assignment to a forensic scientist.

TBI Agent Carl Smith, the forensic scientist who analyzed the substances submitted by Detective Mason, identified his Official Forensic Chemistry Report, which was admitted as an exhibit and showed that he determined that the three samples of white powder submitted consisted of cocaine weighing 273.2 grams, 20.1 grams, and 12.5 grams, respectively. He testified that he determined that the largest sample of green plant material that was submitted for analysis was marijuana with a weight of 428.3 grams. He stated that the gross weight of the other samples of plant material was 3.2 pounds. He then explained that he did not analyze those additional samples because the total weight of all the plant material was less than 10 pounds and therefore would not have moved the offense to the next felony level.

Vivian Smith, the [Petitioner's] sister, testified [on] the [Petitioner's] behalf that she filed a claim for the Nissan automobile that had been seized in the case. She said she paid two separate fees of $350 to cover the claim for the automobile and the claim for the cash, but she had no interest in the cash and simply paid on the [Petitioner's] behalf because he was in jail at the time.

Thomas Latham, the [Petitioner's] father, testified that he arrived at the Third Street residence during the time that the police were executing their search. He said that he stayed until the police left the premises and that he saw them bring a handcuffed Stephen Yates outside and place him into a van

5

as they were leaving. On cross-examination, he testified that he was at the home for approximately three hours and never saw the [Petitioner].

The [Petitioner] elected not to testify and rested his case without presenting any further proof. Following deliberations, the jury convicted him of the indicted offenses.

*Davis*, 2013 WL 6047558, at *1-4. The trial court imposed an effective sentence of forty years for the Petitioner's convictions. *Id.*

## B. Post-Conviction

The Petitioner filed a petition for post-conviction relief, *pro se*, alleging that he had received the ineffective assistance of counsel and that the State had withheld exculpatory evidence in the form of the transcript from a related forfeiture hearing. The post-conviction court appointed counsel who filed an amended petition, incorporating the original petition and additionally alleging: (1) cumulative error entitled the Petitioner to relief; (2) the Petitioner's convictions were based on evidence seized illegally because of an unconstitutional search warrant; (3) the State failed to provide proof of the Petitioner's "targeted individual" status for investigative purposes; (4) the trial court erroneously allowed the confidential informant's identity to remain under seal; (5) juror misconduct by an individual juror; and (6) prosecutorial misconduct and selective prosecution. A hearing on the petition was held, during which the following evidence was presented during in-chambers hearings and in open court: Officer Conway Mason testified that he was a narcotics investigator and worked on the investigation involving the Petitioner. He testified that he paid a confidential informant ("CI") to enter the Petitioner's residence, which the Petitioner shared with Tasha Black, under the auspices of being a potential buyer of the home, which was for sale. The CI went inside the Petitioner's home and observed drugs in the residence and smelled the odor of marijuana. Ms. Black was present when the CI went inside. The CI visited the home a second time and observed drugs in plain view during this visit as well. On the basis of the CI's observations, Officer Mason obtained a search warrant, searched the Petitioner's home, and discovered drugs. He denied that it was possible that Ms. Black planted the drugs in the residence to frame the Petitioner.

Officer Mason agreed that Ms. Black knew that the CI was coming on his first visit, because Officer Mason did not want it to appear that Ms. Black had done anything improper. He stated that, by not giving Ms. Black notice of when the CI would arrive during the first visit and giving her no notice at all of the CI's second visit, Officer Mason eliminated the possibility that Ms. Black put the marijuana out in plain view to frame the Petitioner.

6

Officer Mason testified that he considered Ms. Black to be a "tipster" in this case but that none of the information he used in the search warrant came from her; it came from the CI and was based on the CI's personal observations. He agreed that he knew Ms. Black personally and that he could have asked for her consent to search the residence rather than obtaining a search warrant. He did not seek her consent to protect her from potential retaliation by the Petitioner. The post-conviction court, at this point, made a finding that Ms. Black's conversations with Officer Mason were not relevant to the proceedings, based on the fact that Officer Mason used information he obtained from the CI as the basis for the search warrant.

Tammy Crayne testified that she worked for the District Attorney's Office and was assigned to the Petitioner's post-conviction petition file. Ms. Crayne received the post-conviction file as well as the original file from the Petitioner's trial. Ms. Crayne learned that Ms. Black had approached law enforcement about the Petitioner's alleged physical abuse towards her and that Ms. Black had reported that he kept drugs in the home she shared with him. Ms. Crayne testified that it was her understanding that Ms. Black knew the CI would be coming into her home on the day he found drugs, and Ms. Crayne felt this information was problematic for the investigation, presented a conflict, and was subject to *Brady*. Ms. Crayne felt that ethical violations had occurred and requested to be removed from the case; she passed the case off to another prosecutor.

On cross-examination, Ms. Crayne stated that she disclosed this information to the Petitioner's trial attorney. Ms. Crayne reiterated that she felt that, in the case of a "tipster" in a drug case, it would be exculpatory material required to be disclosed if the tipster was also the person who made the allegation of drug possession and let the CI into the home, as was the case with Ms. Black. Ms. Crayne was concerned that Ms. Black appeared to have set the Petitioner up during the CI's first visit and that information surrounding that visit would have been favorable to the defense and was therefore subject to *Brady*.

The post-conviction court then addressed the issue of Ms. Black's subpoena, which the State moved to quash. The State argued that her testimony was not relevant and her involvement in the search of the residence was not subject to *Brady*; the State also posited that her safety was at issue. The Petitioner argued that she had bias and motive because of their relationship and that she should be subject to cross-examination based on her role in the investigation. Based on the facts presented about Ms. Black's involvement with the CI's visits into the residence, the post-conviction court concluded that her testimony was not relevant to the search warrant issue. The post-conviction court found that the information she provided to law enforcement resulted in a "setup search warrant" but that the search warrant itself was based on the observations of the neutral CI and had nothing to do with what Ms. Black said. The post-conviction court further found that, although Ms. Black was present the first time the CI visited the Petitioner's residence, she did not know

the exact time of the visit. She further had no knowledge of the CI's second visit. Drugs were visibly present in the residence on both visits. The post-conviction court stated: "Ms. Black's testimony is not relevant to the search warrant that was issued there, and as a result disclosure of Ms. Black as the provider of this information is also not relevant, and if it's not material, it can't be *Brady*." The post-conviction court granted the State's motion to quash Ms. Black's subpoena on this basis.

Trail counsel, an assistant public defender, ("Counsel") testified that she represented the Petitioner at trial; he was represented by another attorney in General Sessions Court. She testified that her file on the Petitioner's case had been mistakenly disposed of during an office renovation. Counsel described the Petitioner's case as "hotly contested" and that there were issues with the search warrant. Counsel requested discovery and *Brady* material in this matter. During the investigation, a break-in occurred at the evidence room and some drugs, unrelated to this case, were stolen.

Counsel testified that she knew Ms. Black through the Petitioner as his children's mother. She later became social friends with Ms. Black. Counsel testified that she believed someone had simply set up an appointment to view the Petitioner's residence as a potential buyer and then allowed law enforcement inside. Counsel attempted to suppress the evidence seized during the search based upon the legality of the search of the Petitioner's trash, despite her remaining concerns about the validity of the CI. Counsel testified that Ms. Black's involvement in the case raised a concern, however, she was no longer working on the case by the time she learned about Ms. Black's involvement.

Counsel testified that Ms. Black's role could have been used as part of her defense of the Petitioner had the State disclosed it. Counsel testified that the lease for the Petitioner's residence was in Ms. Black's name. Counsel stated that, through her representation of the Petitioner, she befriended he and Ms. Black and that Ms. Black later interned for her. Counsel then helped Ms. Black get a job at the District Attorney's Office.

Counsel testified that she had concerns about the chain of custody for the drugs seized in this case due to break-ins reported in the evidence room at the Sheriff's Office. An audit of the evidence was conducted by the State, but it was inconclusive, and Counsel was thus unable to secure a continuance in the Petitioner's case on that basis. Regarding property owned by the Petitioner, Counsel said she requested, but did not receive until a week before trial, the related forfeiture documents for the Petitioner's property which the State ultimately used to prove the Petitioner's ownership of the property. She stated that the Petitioner alleged there was an error in the documents related to the amount of drugs found.

The post-conviction court denied the petition, issuing an order incorporating its in-court ruling, which first, determined that any issues related to the search warrant had been litigated on direct appeal and at the appellate court level and thus were not relevant to the post-conviction proceeding. The post-conviction court then found that Counsel represented the Petitioner at a level that would be expected of a trial attorney. The post-conviction court found that no exculpatory evidence had been withheld by the State. The post-conviction court went on to address specifically several other bases on which the Petitioner alleged he received the ineffective assistance of counsel, and, on each individual ground, the post-conviction court concluded that there was insufficient proof presented at the hearing. Regarding any remaining claims of ineffective assistance of counsel presented at the hearing, the post-conviction court found that Counsel had made tactical decisions and took reasonable steps in representing the Petitioner. The post-conviction court concluded that Counsel's representation was diligent and well within the standards of reasonableness.

It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner raises the following issues: 1) the State failed to disclose facts that would be classified as *Brady* material, namely communication between Officer Mason and Tasha Black; 2) the State willfully omitted facts which would have invalidated the search warrant in this case and 3) the post-conviction court abused its discretion when it quashed a subpoena for Tasha Black and ruled that her testimony would be irrelevant. The State responds that the Petitioner has waived his first and second issues because they are being raised for this first time in this appeal and that he has waived his third issue for failing to adequately brief the issue or cite to authority or the record. The State contends that even if the Petitioner has not waived his first and second issues, the evidence he seeks to present does not establish a *Brady* violation because it is neither material nor exculpatory, nor does it establish grounds for suppression.

## A. Waiver

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2014). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2014). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156

(Tenn. 1999) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997)). A post-conviction court's factual findings are subject to a de novo review by this court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this court, with no presumption of correctness. *Id.* at 457.

A petition for post-conviction relief shall be dismissed where "the facts alleged, taken as true, fail to show that the petitioner is entitled to relief or fail to show that the claims for relief have not been waived or previously determined." T.C.A. § 40-30-106(f); *see Cauthern v. State*, 145 S.W.3d 571, 599 (Tenn. Crim. App. 2004) ("When a claim has been previously determined, it cannot form the basis for post-conviction relief."). Furthermore, T.C.A. § 40-30-106(g) provides that "A ground for [post-conviction] relief is waived if the petitioner personally or through an attorney failed to present it for determination or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented[.]" In short, "issues not presented in a post-conviction petition and raised for the first time on appeal are waived." *Johnny O. Clark v. State*, No. W2001-02856-CCA-R3-PC, 2002 WL 1841630, at *7 (Tenn. Crim. App. Aug. 8, 2002).

The Petitioner risks waiver of two of his issues because they were not explicitly presented in either of his two post-convictions petitions and thus not explicitly ruled on by the post-conviction court, giving this court no basis upon which to review them. We acknowledge, however, that evidence loosely tied to these arguments was presented during the post-conviction hearing and the post-conviction court made general rulings with regard to that evidence. As such, we will address the Petitioner's arguments.

### i. *Brady*

As to the Petitioner's first issue on appeal, the issue of communications between Officer Mason and Ms. Black, the post-conviction court found that the State had not withheld exculpatory evidence subject to *Brady*. A defendant must prove the following four prerequisites in order to establish a violation of due process under *Brady*:

1. The defendant must have requested the information (unless the evidence is obviously exculpatory, in which case the State is bound to release the information whether requested or not);
2. The State must have suppressed the information;
3. The information must have been favorable to the accused; and
4. The information must have been material.

10

*State v. Edgin*, 902 S.W.2d 387, 389 (Tenn. 1995). The defendant must prove these due process violation prerequisites by a preponderance of the evidence. *Id.* (citing *State v. Spurlock*, 874 S.W.2d 602, 610 (Tenn. Crim. App. 1993)).

Evidence that is "favorable to an accused" includes both "evidence deemed to be exculpatory in nature and evidence that could be used to impeach the State's witnesses." *Johnson v. State*, 38 S.W.3d 52, 55-56 (Tenn. 2001). Favorable evidence has also been defined as:

> evidence which provides some significant aid to the defendant's case, whether it furnishes corroboration of the defendant's story, calls into question a material, although not indispensable, element of the prosecution's version of the events, or challenges the credibility of a key prosecution witness.

*Johnson*, 38 S.W.3d at 56-57 (citation omitted). The State has an obligation to disclose "any favorable evidence known to the others acting on the government's behalf in the case, including police." *Johnson*, 38 S.W.3d at 56 (quoting *Strickler v. Green*, 527 U.S. 263, (1999)). Additionally, "[t]he duty to disclose exculpatory evidence extends to all 'favorable information' irrespective of whether the evidence is admissible at trial." *State v. Robinson*, 146 S.W.3d 469, 512 (Tenn. 2004) (citing *Johnson*, 38 S.W.3d at 56).

The Tennessee Supreme Court defined "material" within the context of *Brady*:

> Evidence is deemed to be material when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." [A] reviewing court must determine whether the defendant has shown that "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine the confidence of the verdict." In other words, evidence is material when, because of its absence, the defendant failed to receive a fair trial, "understood as a trial resulting in a verdict worthy of confidence."

*Johnson*, 38 S.W.3d at 58 (citations omitted).

We conclude that the evidence does not preponderate against the post-conviction court's findings that the State did not withhold exculpatory evidence. Officer Mason testified that he did not rely on the information provided by Ms. Black to secure his search warrant. His communication with her was simply regarding the CI entering the home she shared with the Petitioner. The search warrant itself, which has been determined by this

11

court to be valid, was based on information provided by the CI. As a result, the evidence that Ms. Black communicated with Officer Mason regarding the CI's visit is not exculpatory or material to the Petitioner's case as the Petitioner has not shown a reasonable probability that, had the evidence been disclosed to the defense, the results of the proceeding would have been different. The Petitioner has not carried his burden sufficient to sustain a claim pursuant to *Brady* and, as such, he is not entitled to post-conviction relief on this issue.

### ii. Search Warrant

As to his second issue, the validity of the search warrant, the post-conviction court found that any issues related to the search warrant had already been litigated at trial and on appeal and were thus not properly presented at the post-conviction phase of the case. As we have stated, "when a claim has been previously determined, it cannot form the basis for post-conviction relief." *Cauthern v. State*, 145 S.W.3d 571, 599 (Tenn. Crim. App. 2004) ("A ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing." Tenn. Code Ann. § 40-30-106(h) (2003)). The evidence does not preponderate against the post-conviction court's findings that the Petitioner's arguments with regard to the validity of the search warrant had been previously determined, at trial and on appeal, and thus were not a proper basis for post-conviction relief. The trial court in this case denied the Petitioner's motion to suppress based on his argument that the affidavit in support of the search warrant contained false statements. *Davis*, 2013 WL 6047558, at *2. On appeal, this court affirmed the decision and held that Officer Mason's affidavit contained neither intentional nor reckless false statements. *Id.* at *6. The post-conviction court properly declined to address the legality of the search warrant a third time and thus, properly denied the Petitioner relief as to this issue.

### B. Ms. Black's Subpoena

We turn now to address the Petitioner's contention that the post-conviction court erred when it granted the State's motion to quash the subpoena of Ms. Black. He contends that he should have been allowed to question Ms. Black at the post-conviction hearing about her involvement in the search of the Petitioner's residence. The State argues that the Petitioner failed to support his argument in his brief with citations to the record or legal authority; thus, the State contends that his argument is waived. The State further argues that, waiver aside, the Petitioner's claim is without merit because Ms. Black's proposed testimony about her involvement in the case, involvement which Officer Mason testified to at the hearing, was not relevant to the issues in the post-conviction petition. We agree with the State.

Our supreme court addressed the issue of subpoenas of post-conviction witnesses as

follows:

> A post-conviction petitioner is entitled to subpoena witnesses to testify in support of his or her claims. Tenn. Sup.Ct. R. 28, § 8(C)(3) ( "Each party [in a post-conviction action] shall have the right to subpoena witnesses for appearance at the evidentiary hearing."). However, a court has the authority "to prevent abuse of its process by abating subpoenas for witnesses whose testimony would be immaterial." *State v. Womack*, 591 S.W.2d 437, 443 (Tenn. Ct. App. 1979); *see also State v. Ostein*, 293 S.W.3d 519, 536 (Tenn. 2009) (holding that a defendant's right to subpoena witnesses "applies only when the proposed witness is material"). Moreover, a court properly quashes a subpoena where the proposed witness is not competent or where the expected testimony will not be admissible. *Bacon v. State*, 215 Tenn. 268, 385 S.W.2d 107, 109 (1964); *State v. Smith*, 639 S.W.2d 677, 680 (Tenn. Crim. App. 1982).

*Taylor v. State*, 443 S.W.3d 80, 84 (Tenn. 2014).

The post-conviction court addressed the State's motion to quash the subpoena issued to Ms. Black and granted it on the basis that Ms. Black's testimony would be irrelevant in light of the issues properly before the post-conviction court. The Petitioner argued that he wanted Ms. Black to testify about what Officer Mason told her regarding his arrangement with the CI going in to the Petitioner's residence. Based on our conclusions that Ms. Black's communication with Officer Mason was not *Brady* material, and that the legality of the search warrant was not a claim upon which post-conviction relief could be granted, any testimony Ms. Black could have provided was not material to the proceedings. The post-conviction court did not abuse its discretion when it granted the State's motion to quash. The Petitioner is not entitled to relief on this issue.

### III. Conclusion

After a thorough review of the record and the applicable law, we affirm the post-conviction court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE

13